# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA STROUGO, Individually and on Behalf of All Others Similarly Situated, | **Case No. 1:14-cv-05797-SAS** |
| Plaintiff(s), | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| BARCLAYS PLC, BOB DIAMOND, ANTONY JENKINS, CHRIS LUCAS and TUSHAR MORZARIA, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY MOHIT SAHNI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

I.      PRELIMINARY STATEMENT ......................................................................1

II.     STATEMENT OF FACTS ...............................................................................1

III.    ARGUMENT ....................................................................................................4

        A.      SAHNI SHOULD BE APPOINTED LEAD PLAINTIFF .....................4

                1.      Sahni is Willing to Serve as a Class Representative ...................5

                2.      Sahni Has the "Largest Financial Interest" ................................6

                3.      Sahni Otherwise Satisfies the Requirements of Rule 23 of the
                        Federal Rules of Civil Procedure ...............................................7

                4.      Sahni Will Fairly and Adequately Represent the Interests of the
                        Class and Is Not Subject to Any Unique Defenses.....................9

        B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
                APPROVED .........................................................................................9

IV.     CONCLUSION................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albert Fadem Trust v. Citigroup Inc.*,
239 F. Supp. 2d 344 (S.D.N.Y. 2002).................................................................... 7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................... 9

*Beck v. Maximus*,
457 F.3d at 296 ...................................................................................................... 8

*Canson v. WebMD Health Corp.*,
No. 11-cv-5382-JFK, 2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011)......................7

*Chilton v. Chiumento Group*,
365 Fed. App'x 298 (2d Cir. 2010) .......................................................................7

*Comverse Tech., Inc., Sec. Litig.*,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ......................................6

*Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WK) (FM),
2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3, 2002) ......................................7

*Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd.*,
No. 12-cv-9264-JSR, 2013 WL 2314267 (S.D.N.Y. May 21, 2013) .....................8

*Gluck v. Cellstar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) .......................................................................7

*In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ..........................................................................7

*In re Donkenny, Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) ..........................................................................6

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992)..................................................................................8

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05-cv-10240-CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................7

ii

*Lax v. First Merchants Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill. 1997) ........................................................................ 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) .......................................................... 6, 10

*Xianglin Shi v. Sina Corp.*,
    No. 05-cv-2154-NRB, 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ...................... 8

## <u>STATUTES</u>

15 U.S.C. § 78u 4(a)(3) ........................................................................... *passim*

## <u>RULES</u>

Fed. R. Civ. P. 23(a) .............................................................................. 7, 8

Mohit Sahni ("Sahni") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), and 15 U.S.C. § 78u-4(a)(3)), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Sahni as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired the American Depositary Shares ("ADSs"), and options contracts to purchase or sell such ADSs, of Barclays PLC ("Barclays" or the "Company"), between August 2, 2011 and June 25, 2014, inclusive (the "Class Period"); (2) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class; and, (3) granting such other and further relief as the Court may deem just and proper.

## I.       PRELIMINARY STATEMENT

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant or movants who possess the largest financial interest in the outcome of the action and who otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Sahni, with losses of approximately $13,498 in connection with his purchases of Barclays securities during the Class Period, has the largest financial interest in the relief sought in this action.  Sahni further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, as he is an adequate representative with claims typical of the other Class members.  Accordingly, Sahni respectfully submits that he should be appointed Lead Plaintiff.

## II.      STATEMENT OF FACTS

Defendant Barclays PLC is a global financial services provider engaged in retail banking, credit cards, wholesale banking, investment banking, wealth management and investment management services.  Barclays is a United Kingdom corporation whose shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "BCS."

Prior to and during the Class Period, Barclays operated a so-called "dark pool" electronic trading venue known as Barclays LX.  As an alternative trading system, Barclays' dark pool allows big blocks of shares to be traded anonymously without informing the market until completion of the desired trade.  This allows the trader to minimize the risk of price movement to the disadvantage of the trader, in the event the market receives notice of the trader's intent before execution.  Such private trading venues, many of which are operated by banks like Barclays, accounted for 14.8% of the stock trading volume in the United States in April 2014.

This case arises out of a scheme and wrongful course of business whereby Barclays provided sophisticated high-frequency trading (or "HFT") firms with material, non-public information so that those market participants could use the informational advantage obtained in a manner that was designed to and did manipulate trading within Barclays LX, to the detriment of Barclays' own institutional clients.

Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts regarding the Company's operation of its dark pool. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Barclays engaged in a "systematic pattern of fraud and deceit" by using its dark pool to favor high-frequency traders over its other clients; (ii) the pools were promoted as offering investors protection from predatory traders, while Barclays instead courted HFT firms by charging them lower rates; (iii) Barclays falsely understated the percentage of aggressive HFT activity in its dark pool; (iv) Barclays failed to provide monitoring services it promised to investors which would protect the dark pool from aggressive, predatory HFTs; (v) Barclays routed a disproportionately high percentage of client orders to its own dark pool while falsely representing that it routed client orders in a manner that did not favor Barclays LX; (vi)

Barclays secretly gave HFT firms informational and other advantages over other clients trading in the dark pool; (vii) Barclays' practices subjected it to regulatory scrutiny and significant reputational harm; (viii) and as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

On June 25, 2014, the New York State office of the Attorney General ("NY AG") issued a press release announcing a lawsuit against Barclays, arising from the operation of Barclays' dark pool and other aspects of its electronic trading division. The press release stated in part:

> The complaint alleges Barclays has dramatically increased the market share of its dark pool through a series of false statements to clients and investors about how, and for whose benefit, Barclays operates its dark pool. Contrary to Barclays' representations that it has implemented special safeguards to protect clients from "aggressive" or predatory high-frequency traders, Barclays is accused of operating its dark pool to favor high-frequency traders.

> "The facts alleged in our complaint show that Barclays demonstrated a disturbing disregard for its investors in a systematic pattern of fraud and deceit," Attorney General Schneiderman said. "Barclays grew its dark pool by telling investors they were diving into safe waters. According to the lawsuit, Barclays' dark pool was full of predators – there at Barclays' invitation."

> The complaint alleges that Barclays falsified marketing material purporting to show the extent and type of high frequency trading in its dark pool.

> \*        \*        \*

> Barclays heavily promoted a service called Liquidity Profiling, which Barclays claimed was a "surveillance" system that tracked every trade in Barclays' dark pool in order to identify predatory traders, rate them based on the objective characteristics of their trading behavior, and hold them accountable for engaging in predatory practices.

> Contrary to those promises, the complaint alleges that:

> • Barclays has never prohibited any trader from participating in its dark pool, regardless of how predatory its activity was determined to be;

> • Barclays did not regularly update the ratings of high-frequency trading firms monitored by Liquidity Profiling;

- Barclays "overrode" certain Liquidity Profiling ratings – including for some of its own internal trading desks that engaged in high-frequency trading – by assigning safe ratings to traders that were otherwise determined to be toxic.

The complaint further alleges that, contrary to Barclays' representations that it protects clients from aggressive or predatory high-frequency trading in its dark pool, Barclays in fact operates its dark pool to favor high-frequency traders and has actively sought to attract them by giving them systematic advantages over others trading in the pool. As alleged in the complaint, this included:

- Falsely underrepresenting the concentration of aggressive high-frequency trading in its dark pool;

- Misrepresenting its "Liquidity Profiling" service – which Barclays claimed protected investors from predatory behavior – by failing to provide many of the benefits marketed with the service; and

- Claiming that Barclays does not favor its own dark pool when routing client orders to trading venues, while in fact doing just that. As alleged in our Complaint, Barclays falsified an analysis of how it routed a major client's orders.

On the news, Barclays' securities fell $1.16, or 7.38%, on extraordinarily heavy volume, to close at $14.55 on June 26, 2014.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   SAHNI SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

4

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.   Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Sahni satisfies all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

**1.   Sahni is Willing to Serve as a Class Representative**

On July 28, 2014, counsel in this action caused a notice (the "Notice") to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Barclays securities that they had until September 26, 2014, to file a motion to be appointed as Lead Plaintiff.  *See* Notice, Ex. A.

Sahni has filed the instant motion pursuant to the Notice, and has attached the requisite certification attesting that he is willing to serve as representatives for the Class and provide testimony at deposition and trial, if necessary. *See* Sahni Certification, Ex. B. Accordingly, Sahni satisfies the first requirement to serve as Lead Plaintiff for the Class.

### 2.   Sahni Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii). *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394-395 (S.D.N.Y. 2008); *In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As of the time of the filing of this motion, Sahni believes that he has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1]  Most courts agree that the approximate loss suffered is the most significant of the four elements.  *See, e.g., Richman v. Goldman Sachs Group, Inc.,* No. 10 Civ. 03461(PAC), 2011 WL 2360291, at *6 (S.D.N.Y. March 25, 2011) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest"); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors, the approximate loss suffered by the movant").

During the Class Period, (1) Sahni purchased 4,025 ADSs of Barclays; (2) expended $73,228 on his purchases; (3) retained all 4,025 ADSs of Barclays; and, (4) as a result of the revelations of the fraud, Sahni suffered a loss of $13,498.  *See* Sahni Loss Chart, Ex. C.  Because Sahni possesses the largest financial interest in the outcome of this litigation, he may be

---

[1] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord In re Converse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively the "*Lax-Olsten*" factors.).

presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  *See also*

*Chilton v. Chiumento Group*, 365 Fed. App'x 298, 299 (2d Cir. 2010) (discussing qualifications

for Lead Plaintiff presumption); *In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 258

F.R.D. 260, 268 (S.D.N.Y. 2009).

### 3. Sahni Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to

possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must

"otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.,* No. 02 Civ. 865 (WK)

(FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v.*

*Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).  Rule 23(a) generally provides that a

class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the

Court need not raise its inquiry to the level required in ruling on a motion for class certification;

instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.

*See Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK, 2011 WL 5331712, at *4 (S.D.N.Y.

Nov. 7, 2011).  Moreover, "typicality and adequacy of representation are the only provisions

relevant to a determination of lead plaintiff under the PSLRA."  *In re Oxford Health Plans, Inc.*

*Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542,

546 (N.D. Tex. 1997); *Olsten.*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims are typical of the class' claims. *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05-cv-10240-CM, 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007) (nothing that "[t]ypicality does not require that the factual background of each named plaintiffs claim be identical to that of all class members.").

The claims of Sahni are typical of those of the Class.  Sahni alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Barclays, or omitted to state material facts necessary to make the statements they did make not misleading.  Sahni, as did all members of the Class, purchased Barclays securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  The class representative must also have sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005); *Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd*., No. 12-cv-9264-JSR, 2013 WL 2314267 (S.D.N.Y. May 21, 2013); *Beck v. Maximus*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "serves to uncover conflicts of interest between

8

named parties and the class they seek to represent") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Sahni adequately represents the Class.  There is no antagonism between Sahni's interests and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation.  Moreover, Sahni has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

> ### 4.   Sahni Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Any Unique Defenses

The presumption in favor of appointing Sahni as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15  U.S.C. § 78u-4(a)(3)(b)(iii)(I).

Sahni's ability and desire to fairly and adequately represent the Class has been discussed above.  Sahni is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Sahni should be appointed Lead Plaintiff for the Class.

> ## B.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C.§

78u-4(a)(3)(B)(iii)(II)(aa).  *See also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (emphasizing that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

Here, Sahni has selected Pomerantz as Lead Counsel.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resumes. *See* Firm Resume, Exhibit D.  As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, Sahni's counsel has the skill and knowledge which will enable them to prosecute this action effectively and expeditiously.  Thus, the Court may be assured that by approving Sahni's selection of Counsel, the members of the Class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Sahni respectfully requests the Court to issue an Order: (1) appointing Sahni as Lead Plaintiff; (2) approving Pomerantz as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: September 26, 2014
         New York, New York

                                        **POMERANTz LLP**

                                        */s/ Jeremy A. Lieberman*
                                        Jeremy A. Lieberman
                                        Francis P. McConville
                                        600 Third Avenue, 20th Floor
                                        New York, New York 10016
                                        Telephone: 212-661-1100
                                        Facsimile:  212-661-8665
                                        Email:  jalieberman@pomlaw.com
                                                fmcconville@pomlaw.com

and

Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184
Email:  pdahlstrom@pomlaw.com

***Counsel for Movant and Proposed Lead
Counsel for the Class***

11