UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA STROUGO, Individually and on Behalf of All Others Similarly Situated, | : : : : : |
| Plaintiff(s), | : : : |
| v. | : : Case No. 14-cv-5797 (SAS) |
| BARCLAYS PLC, BARCLAYS CAPITAL, INC., ROBERT DIAMOND, ANTONY JENKINS, CHRISTOPHER LUCAS, TUSHAR MORZARIA, and WILLIAM WHITE, | : : : : : : : |
| Defendants. | : |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 3

    1.    **Plaintiffs are Entitled to the *Basic* Presumption of Reliance** ............................ 3

    2.    **Defendants Have Failed to Rebut the Presumption of Reliance by Showing Lack of Price Impact** ........................................................................................ 6

        a.    **The Price Maintenance Theory of the Case Supports Price Impact** .... 7

        b.    **Defendants' Materiality Arguments Are Inappropriate at the Class Certification Stage** ........................................................................................ 9

        c.    **Defendants' Loss Causation Arguments are Inappropriate at the Class Certification Stage** ....................................................................... 11

    3.    **Individualized Damage Issues Will Not Predominate** ...................................... 13

# **TABLE OF AUTHORITIES**

Federal Cases

*Amgen Inc.* v. *Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) .................................................................................................. 2, 3, 9
*Butler v. Sears Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ..................................................................................................... 14
*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
   No. 12-CV-5329 SAS, 2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015) .............................. *passim*
*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .......................................................................................................... 3, 13
*Dodona I, LLC v. Goldman, Sachs & Co.*,
   296 F.R.D. 261 (S.D.N.Y. 2014)........................................................................................... 3, 10
*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
   131 S. Ct. 2179 (2011) .......................................................................................................... 2, 15
*Fogarazzo v. Lehman Bros.*,
   232 F.R.D. 176 (S.D.N.Y. 2005).................................................................................................. 3
*Fogarazzo v. Lehman Bros.*,
   263 F.R.D. 90 (S.D.N.Y. 2009).................................................................................................... 3
*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015)................................................................................................... 7, 8
*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   No. 10 CIV. 3461 PAC, 2015 WL 5613150 (S.D.N.Y. Sept. 24, 2015) .................... 4, 8, 12, 15
*In re Groupon, Inc. Sec. Litig.*,
   2014 WL 5245387 (N.D. Ill.Sept. 23, 2014).............................................................................. 14
*In re SLM Corp. Sec. Litig.*,
   No. 08 CIV. 1029 WHP, 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ..................................... 15
*Lentell* v. *Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)....................................................................................................... 11
*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*,
   No. CV 10-J-2847-S, 2014 WL 6661918 (N.D. Ala. Nov. 19, 2014) ...................................... 12
*Plumbers & Pipefitters Nat. Pension Fund* v. *Burns*,
   292 F.R.D. 515 (N.D. Ohio 2013).............................................................................................. 9
*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)....................................................................................................... 13
*Strougo v. Barclays PLC*,
   No. 14-CV-5797 SAS, 2015 WL 1883201 (S.D.N.Y. Apr. 24, 2015) ...................................... 10

**I. INTRODUCTION**

That the Class here should be certified is beyond peradventure: 1) Defendants concede that the Class has satisfied the four requirements of Rule 23(a) as well as the superiority requirement of Rule 23(b)(3); 2) Defendants do not dispute that the market for Barclays ADSs---which trade on the New York Stock Exchange ("NYSE") and are equity securities for one of the most closely watched, actively-traded financial institutions in the world---was efficient during the Class Period; 3) Defendants have failed to rebut the presumption of reliance by showing a lack of price impact; and 4) this Court has already evaluated the market for Barclays' ADSs for a class period spanning a time of high volatility (as compared to the alleged Class Period) and found the market efficient (*See Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, No. 12-CV-5329 SAS, 2015 WL 5000849, at *9 (S.D.N.Y. Aug. 20, 2015). All that remains is a meritless challenge to Rule 23(b)(3)'s predominance requirement based on arguments that transparently avoid the only relevant inquiry- whether Barclays ADSs traded in an efficient market during the Class Period. Instead, Defendants rely on the report of Christopher M. James, who, like their chosen "expert" in *Carpenters*, does not conduct any independent event study or render any opinion on the efficiency of the market but instead seeks to employ a standard for assessing the cause and effect *Cammer* factor ("*Cammer* 5") which is far more stringent than what this, and other courts, have deemed acceptable, and attacks the well accepted rigorous methodology employed by Plaintiffs' market efficiency expert, Dr. Zachary Nye. *Id.* at *9 ("not even the *Cammer* court considered the fifth factor necessary.") In *Carpenters,* this Court has already evaluated the very brand of arguments Defendants proffer here and cogently deemed them "unpersuasive." *Id*.

Additionally telling is that Dr. James only quibbles with Dr. Nye's approach as to a single *Cammer* factor but testified that he agrees with both Dr. Nye's approach *and* conclusion as to the remaining four *Cammer* factors and all three *Krogman* factors, all of which provide evidence

1

consistent with an efficient market. This alone is overwhelming proof that the Class is entitled to the *Basic* presumption of reliance. *Id.* at *17 ("[a]lthough *Cammer* 5 supports efficiency, I would have found efficiency on this record even without it").

Defendants did not conduct any price impact analysis (either through their expert, Nye Rebuttal[1], ¶ 52, or otherwise) to rebut the presumption of reliance, implicitly recognizing that any such analysis would support Plaintiffs position, and instead put forth materiality and loss causation (guised as price impact) arguments in contravention of the Supreme Court's holdings in *Amgen Inc.* v. *Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1200 (2013) and *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 131 S. Ct. 2179 (2011) ("*Halliburton I*"), which explicitly held that such arguments have no bearing on the class certification analysis.

In their last ditch challenge to class certification, Defendants advance additional loss causation arguments, this time under the guise of *Comcast*, which are also inappropriate for resolution on a Rule 23 motion. Defendants have failed, however, to proffer any evidence suggesting that damages cannot be proven by means of common evidence or involve individualized proof. Consistent with the price maintenance theory of the case and with the Court's finding in *Carpenters*, Dr. Nye explained that damages for investors who purchased Barclays' ADSs during the Class Period can be calculated using an "out-of-pocket" method that is common

---

[1] "Nye Rebuttal" refers to the Expert Rebuttal Report of Zachary Nye, Ph.D, dated October 26, 2015, attached as Exhibit A to the Declaration of Tamar A. Weinrib, filed concurrently herewith ("Weinrib declaration"). The Nye Rebuttal simply addresses arguments raised in the James Report and does not include any new analysis or opinions not already stated previously. As such, there is simply no basis for Defendants to seek Dr. Nye's deposition again, as they suggest in their letter to this Court on October 21, 2015 (Dkt. #64). Moreover, in that letter Defendants suggest that the October 19, 2015 Second Amended Scheduling Order does not "permit such a report." Nowhere, does the language of the Order preclude the filing of an expert rebuttal report, a common practice in securities class action certification briefing.

to the class, a method that Dr. James himself espouses. *See* Nye Report, §VIII; James Tr.[2], 77:4-8.

This satisfies the "minimal scrutiny" required by the Supreme Court in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). *Carpenters*, 2015 WL 5000849, at *21.

Because Plaintiffs have met their burden of establishing reliance pursuant to *Basic*, and Defendants' brief is bereft of any credible challenge, Plaintiffs' Motion should be granted.

## II. ARGUMENT

### 1. Plaintiffs are Entitled to the *Basic* Presumption of Reliance[3]

Plaintiffs have sufficiently established that Barclays ADSs, which trade at high volumes on the NYSE, traded in an efficient market throughout the Class Period and are therefore entitled to the *Basic* presumption of reliance. Though Defendants claim to disagree, their brief and their purported expert's report and testimony, suggest otherwise. Defendants agree with Dr. Nye's approach and conclusions with regard to four of the five *Cammer* factors and all three *Krogman* factors which support a finding of market efficiency. James Tr., 71:12-25; 72:2-8. With regard to

---

[2] "James Tr." refers to the transcript of the deposition of Christopher M. James, dated October 22, 2015, attached as Exhibit B to the Weinrib declaration.

[3] The *Affiliated Ute* presumption of reliance also applies to Plaintiffs' omissions claims. Once the *Affiliated Ute* presumption applies, "'the burden shifts to the defendant to establish . . . that the plaintiff did not rely on the omission in making the investment decision.'" *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 100 (S.D.N.Y. 2009) (Scheindlin, J.) ("*Fogarazzo II*"). Defendants make no attempt to rebut the *Affiliated Ute* presumption but simply drop a footnote acknowledging Plaintiffs' invocation of the presumption and asserting that Plaintiffs allege that "Barclays made a number of affirmative misstatements." Def. Br. at 7, fn. 8. Defendants do not however, meaningfully contest that Plaintiffs' allege that Defendants omitted material information including, *inter alia*, Barclays "overriding" certain Liquidity Profiling ratings, Barclays giving perks and other systematic advantages to high-frequency traders, and Barclays' failure to apply the protections of Liquidity Profiling to a significant portion of the trading in its dark pool. Even in cases involving misrepresentations, the applicability of *Affiliated Ute* "is not undermined simply because a defendant makes misstatements at the same time it omits material information." *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176 at 185-87 (S.D.N.Y. 2005) (*"Fogarazzo I"*)(certifying class and finding that both the *Basic* and *Affiliated Ute* presumptions apply); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 270 (S.D.N.Y. 2014) ("the existence in Dodona's complaint of certain affirmative misrepresentations does not at this stage in the litigation preclude Dodona from relying on the *Affiliated Ute* presumption").

3

*Cammer* 5, Defendants do not dispute the conclusion that Barclays ADSs traded efficiently during the Class Period but instead throw ineffectual darts at the methodology used to reach that conclusion. There is therefore no real dispute concerning the market efficiency for Barclays ADSs. *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 CIV. 3461 PAC, 2015 WL 5613150, at *6 (S.D.N.Y. Sept. 24, 2015) ("Plaintiffs are correct that there is no real dispute concerning the market efficiency for Goldman's stock…While Defendants take issue with Dr. Finnerty's evaluation of the fifth *Cammer* factor … they do not otherwise suggest that the market for Goldman's stock was not efficient").

The Barclays Defendants' chosen strategy of attacking the *Cammer* 5 journey but not the destination ignores this Court's holding in *Carpenters* that satisfying *Cammer* factor 5 is not necessary for a finding of efficiency. *Carpenters*, 2015 WL 5000849, at *9, *16-17 (holding that "not even the *Cammer* court considered the fifth factor necessary," and that "[a]lthough *Cammer* 5 supports efficiency, I would have found efficiency on this record even without it"). Indeed, most courts agree that the very fact that a stock trades on a major exchange, like the NYSE, "is a good indicator of efficiency." *Id.* at *7. It is only in "unusual circumstances" that courts have found that stocks traded on major exchanges are not traded on an efficient market. *Id.* Even Dr. James, try as he might to avoid admitting that most stocks trading on the NYSE are efficient, testified that "a stock trading on the NYSE has certain elements that are conducive to market efficiency." James Tr., 49:21-23, 64:7-16. Plaintiffs have demonstrated, and Defendants do not dispute, that Barclays ADSs traded in high volumes on the NYSE and were followed by a large number of analysts during the Class Period, facts which this Court has agreed generally suggest market efficiency *See Carpenters*, 2015 WL 5000849, at *9 ("in most cases, evidence that a stock trades at high volumes on a large national market, such as the NYSE or NASDAQ, and is followed by a large number of analysts will be sufficient to satisfy the *Basic* presumption on class certification.")

4

This conclusion becomes unassailable once Dr. Nye's rigorous *Cammer* 5 analysis is added into the mix. Specifically, Dr. Nye's event study shows that Barclays' securities moved in a statically significant and directionally consistent manner, on nine out of fourteen earnings release event dates. Nye ¶ 61. The event study also shows that for the five dates on which Barclays' securities did not move in a statistically significant manner, "the Company's earnings results were generally in line with market expectations, and/or the results were largely mixed, such that the insignificant returns are consistent with that expected in an efficient market." *Id.*[4]

Dr. James mistakenly argues that Dr. Nye did not set objective criteria prior to conducting his event study and attempts to impose a standard that is beyond what this Court, and indeed most other courts, have found sufficient. Nye Rebuttal, ¶¶ 8-9. Revealingly, when questioned, Dr. James could not point to a single expert report on market efficiency in which he himself has employed the nearly impossible standards he claims to espouse, nor could he identify a single case where he assessed the efficiency of the market for ADSs at all. James Tr., 47:13-19. Further, Dr. James' criticisms are belied by his own use of the regression model Dr. Nye used in his event study and his admission that Dr. Nye conducted his regression analysis correctly. *Id.* at 15:2-7; 15:17-22; 83:3-4, 10-11; 214:13-14. In addition, the self-serving examples that Dr. James' provides in criticizing how Dr. Nye interpreted the results of the event study are selective, incomplete, and contradicted by the facts. Nye Rebuttal, ¶¶ 28-39. Dr. James opinion is all the more tainted in that it conveniently focuses solely on earnings information, without taking into account that Barclays routinely announced multiple pieces of complex, value-relevant information.[5] *Id.* at ¶¶ 22-27. With

---

[4] The 24 other event dates, Company events and presentations, which Dr. Nye included in order to widen the universe of studied events, did not cause the stock to move in a statistically significant manner because the releases on those days did not contain new value relevant information. This is entirely consistent with an efficient market. Nye Rebuttal, ¶ 48.

[5] In addition, Dr. James argues that Dr. Nye should have included Standard Chartered in the industry index for purposes of his regression model. As Dr. Nye testified, this only affects the

no event study of his own and no suggestion that Barclays ADSs traded in an efficient market, Dr. James (and Defendants) have provided no basis for this Court to hold any differently than it did in *Carpenters*. *Carpenters,* 2015 WL 5000849, at *10 ("Defendants here chose not to submit their own event study").

*Carpenters* is all the more relevant given that *Carpenters* also involved Barclays ADSs and the class period there spanned a time of "increased volatility of the markets during the financial crisis." *Id.* at *14. Despite this, the Court held:

> As a threshold matter, defendants' attack on Dr. Finnerty's opinion focuses almost exclusively on the event studies he performed in connection with *Cammer* 5. This challenge is too narrow. It is widely accepted that analysis of the *Cammer* and *Krogman* factors is a reliable and accepted methodology for establishing market efficiency.[116] Because there is no serious disagreement concerning Dr. Finnerty's methodology with respect to the majority of these factors—and because I conclude that *Cammer* 5 is not required in this case—there is no basis to reject Dr. Finnerty's opinion that the market is efficient. This conclusion is supported by his testimony concerning *Cammer* 1 through 4, the additional analyses he performed, such as random walk tests and consideration of the *Krogman* factors, and the general efficiency of the NYSE.

*Id.* at *11. Here, where no such increased volatility existed during the alleged Class Period, Defendants arguments fall even shorter.

### 2. Defendants Have Failed to Rebut the Presumption of Reliance by Showing Lack of Price Impact

Defendants here offer no evidence, either through an event study or otherwise, that there is a lack of price impact and thus have done nothing to rebut the presumption of reliance. As this Court held in *Carpenters* in certifying the class:

> In the usual case of common or other highly traded and analyzed stock, there is no reason to burden the court with review of an event study and the opposing expert's

---

regression for the London shares since Standard Chartered did not trade in the U.S. Furthermore, the ADSs and London shares had similar actual/raw returns (in terms of magnitude and direction) on the only two dates (10/31/12 and 4/24/13) for which adding Standard Chartered to the index has any effect, and that effect was a minimal 0.1% difference to the residual return. Nye Rebuttal, ¶¶ 40-43.

6

attack of it. The exception, and this was also made clear in *Halliburton II*, is when defendants present evidence of lack of price impact or that the market was inefficient. In those cases, an event study or other rebuttal evidence is required and class certification becomes a battle of competing expert studies. ***Defendants here chose not to submit their own event study***.

*Id.* at *10 (emphasis supplied). Even Defendants' expert, while again attacking Dr. Nye's methodologies, fails to proffer an analysis of price impact. In fact, the phrase "price impact" does not appear a single time in Dr. James' report. Moreover, it is not Plaintiffs' burden to prove price impact - it is Defendants' burden to prove lack of price impact. *Id.* ("the Supreme Court has made clear that plaintiffs are not required to prove price impact on class certification, and Dr. Finnerty has not been offered as an expert for this purpose.")

### a. The Price Maintenance Theory of the Case Supports Price Impact

Ignoring the theory of the case, Defendants argue that there is no price impact because the misstatements did not cause a statistically significant price increase. However, lack of price movement does not prove the misstatements did not affect the price of Barclays ADS where Plaintiffs' theory of the case is one of price maintenance. Nye Rebuttal ¶53; Nye Tr. at 161:2-162:22, 232:24-233:9; *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 415 (7th Cir. 2015), *reh'g denied* (July 1, 2015)("the movement of a stock price immediately after a false statement often tells us very little about how much inflation the false statement caused."); *Carpenters*, 2015 WL 5000849, at *11 ("Furthermore, a "material misstatement can impact a stock's value either by improperly causing the value to increase or by improperly maintaining the existing stock price." Dr. Finnerty testified that Barclays' LIBOR submissions were material omissions that maintained inflation in Barclays ADS").

As Defendants acknowledge, Plaintiffs' Motion makes clear that "Defendants' false and misleading statements regarding Barclays' transparency and safeguards maintained the price of Barclays' securities at levels that reflected investor confidence in the integrity of the

7

Company…[until] Barclays' shares fell 7.38% on June 26, 2014." Def. Br. at 9-10. Indeed, in an efficient market, one would not expect a misstatement to move the market if that statement did not contain new value relevant information. Defendants take issue with the price maintenance theory of the case because the inflation in the price of Barclays' ADS "arose at some undefined time *prior* to the putative class period." Def. Br. at 9. But as the Seventh Circuit made clear, "there is no law" that "requires the plaintiffs to prove how the inflation was introduced into the stock price in the first place." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 418 (7th Cir. 2015), *reh'g denied* (July 1, 2015).

Defendants then seem to suggest, relying on *In re Moody's Corp. Sec. Litig.*, that where inflation is based on a theory of price maintenance there can never be price impact. Aside from the fact that the *Moody's* decision pre-dates the Supreme Court's decision in *Halliburton II* and never once mentions the phrase "price impact," this premise is completely contrary to the Carpenters decision. *See Carpenters*, 2015 WL 5000849, at *17 ("The failure of an event study to find price movement does not prove lack of price impact with scientific certainty" and finding that defendants failed to rebut price impact where plaintiffs' advanced a theory of price maintenance). Moreover, in *Goldman*, the court recently held:

> that the misstatements had no impact on the stock price when made is insignificant. Plaintiffs' argument is that the misstatements simply served to maintain an already inflated stock price. Reply at 7–8; Rebuttal Decl. ¶¶ 204–05. Price impact "can be shown by a stock price reaction either at the time of the statement or at the time of the corrective disclosure, [and] analysis of price impact usually focuses on stock price movement at the time the truth is disclosed," Pl. Mem. at 16 (emphasis omitted) (citing cases), and so the fact that there was no stock price increase when the statements were made does not suggest a lack of price impact.

*In re Goldman Sachs*, 2015 WL 5613150, at *6.

### b. Defendants' Materiality Arguments Are Inappropriate at the Class Certification Stage

Directly disregarding this Court's ruling on the motion to dismiss ("April 24 Order") Defendants next argue that Plaintiffs' theory that inflation began pre-Class Period is foreclosed by the fact that "it was only Barclays' response to the LIBOR settlement announced on June 27, 2012—a date well into the putative class period—that could have rendered the alleged misstatements about LX material, and thus created inflation in Barclays' ADS price." Def. Br. at 10-11. This argument is inappropriate for two equally significant reasons: 1) the Supreme Court's ruling in *Amgen* makes clear that materiality arguments such as these are inappropriate for resolution at this stage; and 2) in ruling on materiality and upholding the Complaint, the April 24 Order *makes absolutely no mention of the June 27, 2012 announcement*.

First, in *Amgen*, the Supreme Court held that "proof [of materiality] is not a prerequisite to class certification." 133 S. Ct. at 1191. Subsequently, courts have uniformly applied *Amgen* to preclude the precise arguments that Defendants raise here. Yet Defendants make no effort to reconcile their arguments with this controlling case law. Instead, they cite inapplicable or outdated authority while brazenly ignoring the Supreme Court's unambiguous ruling. Materiality arguments are simply "irrelevant to the inquiry regarding whether the class should be certified." *Plumbers & Pipefitters Nat. Pension Fund* v. *Burns*, 292 F.R.D. 515, 528 (N.D. Ohio 2013).

Second, in its April 24 Order the Court ruled that the Complaint adequately pleads materiality and does not limit that finding to statements made post June 27, 2012, ***nor does it reference the June 27, 2012 date at all***:

> Despite this, the Complaint adequately alleges materiality. Barclays had staked its "long-term performance" on restoring its integrity.[120] As alleged, the specific misstatements about LX—which include touting its safety while secretly encouraging predatory behavior—call into question the integrity of the company as a whole. For this reason, it is inappropriate to focus only on the revenue stream of LX when assessing the quantitative factor. Likewise, SAB No. 99 permits

9

consideration of market reaction in instances where management expects "that a known misstatement may result in a significant positive or negative market reaction." Drawing all reasonable inference in plaintiffs' favor, the Complaint adequately alleges Barclays' past scandals, its efforts to restore its reputation, and, most significantly, misrepresentations that go to the heart of the firm's integrity and reputation. Accordingly, I cannot conclude as a matter of law that there is *not* a "substantial likelihood that a reasonable shareholder would consider [the misrepresentations about LX] important in deciding how to [act]."[121]

*Strougo v. Barclays PLC*, No. 14-CV-5797 SAS, 2015 WL 1883201, at *10 (S.D.N.Y. Apr. 24, 2015).[6] Defendants' self-serving narrow reading of this Court's ruling on materiality, excerpted above, is simply wrong. Unsurprisingly, though repeating this view numerous times (Def. Br. at 1, 2, 6, 10, 11, 25) Defendants include no pinpoint cite[7] to this Court's April 24 Order stating that alleged statements could only have been material following the June 27, 2012 announcement of Barclays' settlement with government regulators related to LIBOR, because nowhere does the April 24 Order make that finding. Defendants' arguments are nothing more than an attempt to revive challenges to materiality that this Court has already rejected in denying their motion to dismiss. Indeed, the allegation of the Complaint is that the Company's failure to disclose its unethical operation of Barclays LX rendered the Company's statements false throughout the entire Class Period. Nothing in the Court's April 24 Order rebuts or dismisses this allegation. As such, Defendants' arguments also have no relevance to the only inquiry at hand—whether the market was efficient for Barclays ADSs throughout the Class Period. As already explained above, it undeniably was.[8]

---

[6] Indeed, the April 24 Order references not just the LIBOR scandal but the "series of scandals" alleged in the Complaint. *Id.* at *1.

[7] The only pinpoint cite Defendants reference is to the block quote included above, which makes no reference to the June 27, 2012 settlement announcement.

[8] For the same reasons, there is simply no basis for shortening the Class Period to being on February 14, 2013. *See* Def. Br. at 25. The Court has already ruled on the materiality of the pre-February 14, 2013 misstatements; determinations of materiality are not appropriate at the class certification stage in accordance with *Amgen*; and Plaintiffs have demonstrated market efficiency for the entire Class Period beginning August 2, 2011—the only relevant inquiry on this Motion.

### c. Defendants' Loss Causation Arguments are Inappropriate at the Class Certification Stage

Next in their long line of arguments that have no place in class certification briefing, Defendants put forth arguments about what caused the stock to plummet on June 26, 2014. Def. Br. at 11-14, though they acknowledge that this Court has already ruled that such loss causation arguments have "no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory," Def. Br. at 12, n. 13 (citing *Carpenters*, 2015 WL 5000849, at *4 n.44); *see also Id.,* at *18 ("Defendants' contentions about what can or cannot cause a price drop are arguments about loss causation, which under *Halliburton I* is not an element of market efficiency. Plaintiffs are not required to prove loss causation on class certification."). Indeed, this Court has stated unambiguously:

> Significantly, however, the Supreme Court made clear in *Halliburton II* that plaintiffs are not required to prove price impact directly to invoke the *Basic* presumption. Rather, market efficiency and the other prerequisites for invoking the presumption serve as a proxy for price impact. Furthermore, in *Halliburton I* the Supreme Court held that a securities fraud plaintiff need not establish loss causation—*i.e.,* that plaintiffs' damages were caused by the fraud and nothing else—in order to certify a class. In so holding, the Supreme Court explained that loss causation was not an element of reliance.

*Id*, at *4 (internal citation omitted). In any event, that there is loss causation as to the June 26, 2014 drop is a point Defendants conceded in their motion to dismiss. *See* Dkt. #29. In failing to raise this issue sooner, Defendants implicitly admitted that materialization of a risk, *i.e.,* litigation and other regulatory action, will suffice for loss causation purposes. *See Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)(finding that under the materialization of risk approach, which does not require a revelation of the fraud, a plaintiff can satisfy loss causation if it pleads that the defendant exposed him to an undisclosed risk that subsequently materialized and that the materialization of this risk resulted in the complained loss).

Even if Defendants were right (and they're not) that the stock price moved on the corrective disclosure date in response to the government investigation which they awkwardly claim is "unrelated to the alleged misstatements," (Def. Br. at 12), they have not shown that there is no portion of the stock drop on that is attributable to the revelation of the fraud. The *Goldman* decision is directly on point:

> Defendants argue that Dr. Gompers demonstrated the absence of price impact by analyzing the focus of market commentary on Goldman on the corrective disclosure dates and whether market commentary discussed the impact of revelations about misstatements on the stock price. But whether or not the market was focused to some degree on the impact the enforcement actions would have on the stock price does not mean that no decline in stock price is attributable to the revelation of misstatements. Dr. Gompers' analysis fails to demonstrate that no part of the decline was caused by the corrective disclosure. Likewise, while Dr. Choi's report focuses on the fact that the announcements of enforcement actions would cause a level of decline, Dr. Choi fails to demonstrate that it would cause the entirety of the decline that occurred here.

*In re Goldman Sachs*, 2015 WL 5613150, at *7 (internal citation omitted). Regardless, the only relevant inquiry for market efficiency purposes is whether the market quickly assimilated the new information released on the disclosure, which it did. *See, e.g., Carpenters*, 2015 WL 5000849, at *18 ("the fact that the stock price changed dramatically due to collateral consequences shows that the stock quickly assimilates new information. In other words, even if this type of price reaction is not sufficient to establish loss causation, it is sufficient to show market efficiency. Thus, far from supporting defendants, this price reaction supports market efficiency")(internal citation omitted).

This is not the first time Professor James has advanced such misplaced assertions, which were soundly rejected by the court. *See, e.g., Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, No. CV 10-J-2847-S, 2014 WL 6661918, at *5 (N.D. Ala. Nov. 19, 2014)(finding that defendants and their expert confused price impact with loss causation in arguing that "none of the misrepresentations were material because the marked price never reflected the misrepresentations" and that plaintiffs did not show the decrease in stock price upon

the corrective disclosure stemmed from the "particular announcement the plaintiffs claim because Regions released other information unrelated to the plaintiffs' allegations at the same time.")

The bottom line is that it is Defendants' burden to establish price impact in order to rebut the fraud on the market presumption, and they have not done so. As in *Carpenters,* "Because defendants have not presented compelling evidence of lack of price impact, plaintiffs do not have to present evidence of price impact to satisfy Rule 23(b)(3). Accordingly…plaintiffs are entitled to rely on the *Basic* presumption of reliance for misstatements and have satisfied the requirements of Rule 23(b)(3)." *Carpenters*, 2015 WL 5000849, at *19.

### 3. Individualized Damage Issues Will Not Predominate

Defendants raise additional premature, merits-based loss causation arguments under the guise of a Rule 23(b)(3) damages-based predominance argument based on the *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) antitrust opinion, paying absolutely no heed to this Court's recent ruling in *Carpenters*, 2015 WL 5000849, at *2. *See also, Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) ("the Court did not hold that proponents of class certification must rely upon a class-wide damages model to demonstrate predominance.") In *Carpenters*, this Court made abundantly clear that "[i]ssues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases." *Carpenters*, 2015 WL 5000849, at *2 (internal citation omitted). Specifically, this Court found that *Comcast* requires only "minimal scrutiny" (*Id.* at * 21) and further explained:

> Thus, "[p]redominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." And "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification."

*Id.* at *2. Indeed, nothing in *Comcast* detracts from the fundamental principle underpinning both *Halliburton* and *Amgen* that in a motion for class certification, the court must distinguish between issues that can be proven by means of common evidence or involve individualized proof, and issues that simply resolve the entire case on the merits. In the securities context, it is difficult to imagine how the measurement of damages could or would be made on an individualized basis, as damages are determined by changes in the market price, a price common to all potential class members. *See, e.g., In re Groupon, Inc. Sec. Litig.,* 2014 WL 5245387, at *2 (N.D. Ill.Sept. 23, 2014) (rejecting defendants' Comcast arguments and explaining that "Comcast was an antitrust class action brought by subscribers against the cable company and is inapposite in a securities fraud class action such as this").

As Dr. Nye confirms, Plaintiffs' theory of the case is that Defendants false statements regarding Barclays' dark pool artificially maintained its stock price, and that this inflation was removed from the ADS price following the corrective disclosure on June 26, 2014, as reflected in the price drop that same day. Consistent with this theory and with the Court's finding in *Carpenters*, Dr. Nye explained that damages for investors who purchased Barclays' ADSs during the Class Period can be calculated using an "out-of-pocket" method that is common to the class, a method that Dr. James himself espouses. *See* Nye Report, §VIII; Nye Rebuttal, ¶ 50-51; James Tr., 77:4-8. Defendants have failed to provide any evidence contradicting this. *See, In re Diamond Foods Inc. Sec. Litig.,* 295 F.R.D. 240, 252 (N.D. Cal. 2013) ("While defendant contends that plaintiff has failed to meet its burden of demonstrating a class-wide method of proof, defendant does not identify any specific complications that would make such a calculation impossible or ill-advised in this case.") *See also, Butler v. Sears Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("Unlike the situation in Comcast, there is no possibility in this case that damages could be attributed to acts of the defendants that are not challenged on a class-wide basis.")

Dr. James' criticism that Plaintiffs must put forth the precise mechanisms by which confounding information can be identified and disaggregated, in order to determine the exact level of price inflation on each day during the Class Period (James Report, ¶¶ 67, 68, 75), requires an assessment of loss causation, which is not required at this stage of the litigation. *See Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179 (2011) ("*Halliburton I*"); *In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 WHP, 2012 WL 209095, at *5 (S.D.N.Y. Jan. 24, 2012) ("evaluating potentially confounding information on the disclosure dates, and determining whether it was material, is tantamount to a loss causation analysis"). Indeed, as Judge Crotty held in certifying a class action against Goldman Sachs, "any failure of the methodology to disaggregate the losses purportedly attributable to disclosures about government enforcement activities from those that Plaintiffs attribute to the challenged statements would not defeat the class's predominance because it would affect all class members in the same manner." *In re Goldman Sachs,* 2015 WL 5613150, at *8. In any event, as the Complaint makes clear (and Defendants did not dispute in their motion to dismiss) the disclosure of the fraud and the announcement of regulatory action are inextricably intertwined (the regulatory action constitutes a materialization of the risk caused by Defendants' unethical operation of Barclays LX) and therefore do not require disaggregation.

Further, Defendants have failed to demonstrate how any flaws in plaintiff's methodology create individual issues rather than a failure of class-wide proof. Indeed, their baseless assertion that the fact of the New York Attorney General suit rather than disclosure of previously omitted material facts could have caused part of the loss is not an individual damage issue but rather an analysis that would apply to the class as a whole. That is all that is relevant in determining whether certification is appropriate. In any event, as explained by the Second Circuit, *Comcast* "did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations." *Carpenters*, 2015 WL 5000849, at *21.

15

Dated: October 26, 2015
New York, New York

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Tamar A. Weinrib
Emma Gilmore
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: taweinrib@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiffs and the Class***