

**Jeremy A. Lieberman**
Managing Partner

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/18

May 11, 2018

**VIA FACSIMILE**

Hon. Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

### Re: *Strougo v. Barclays PLC, et al.*, No. 14-cv-5797 (S.D.N.Y.)

Dear Judge Marrero:

Pursuant to Part II.A.2 of Your Honor's Individual Practices, Class Representatives Mohit Sahni and Joseph Waggoner, individually and on behalf of all others similarly situated, (Plaintiffs), oppose Defendant William White's May 9, 2018 letter request for a pre-motion conference seeking permission to file a summary judgment motion ("Letter"). Plaintiffs incorporate the arguments set forth in their other two letters, filed contemporaneously, in response to the letter requests of the remaining Defendants.

***There are genuine disputes of fact regarding whether Defendant White acted with the requisite scienter.*** Any public misstatements that Defendant White made to LX clients are directly relevant to Barclays' ADS holders who, as stated, placed great importance on Barclays' integrity in light of past scandals. Defendant White, who Defendants acknowledge is the source of the misstatements, undeniably exhibited the requisite intent. When one speaks on a subject they imply their direct knowledge thereof. *Strougo*, 105 F. Supp. 3d at 351 ("he "held himself [out] to the public as intimately knowledgeable about LX's functions and purported transparency.""). If they do not have such knowledge, than the very making of the statement is highly reckless.

Moreover, numerous deponents (including Defendant White) testified to Defendant White's direct oversight and involvement in LX and the misconduct at issue here.[12]

---

[1] *See, e.g.*, White Dep Tr., March 29, 2016, 24:4-6; 37:16-25; 41:23-25; 42:3-9; 56:4-19; 64:12; Sharma Dep. Tr, January 27, 2016, 23:13-25, 24:2-23; 76:16-24; 77:9-12; 154:21-24; 156:11-25; 157:3-5; 190:21-24; 191:4; Alexander Dep. Tr., March 2, 2016, 123:9-10; Guerrera Dep. Tr., February 29, 2016, 117:20-25; 118:2-11; 122:21:25; 123:2-17; Janczewski Dep. Tr., March 21, 2016, 20:17-25; 21:2-12; 27:22-25; 28:2-25; 29:2-8; 30:23-25; 31:2-23; 57:8-16; Hora Dep. Tr., March 3, 2016, 98:14-15; 99:2-6; 118:7-22; 236:24-25; 237:2-11; Giordano Dep. Tr., March 18, 2016, 69: 8-25; 70:2-16; 93:6-25; 94:2-25; 95:2-18;

jalieberman@pomlaw.com

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK        CHICAGO        LOS ANGELES        PARIS

Hon. Victor Marrero
May 11, 2018
Page 2



Furthermore, two former Barclays Directors informed the government that everybody knew internally about the fraud. As the District Court here has already held:

> [T]here is strong circumstantial evidence of conscious misbehavior or recklessness on the part of White. Not only was White the source of many of the allegedly false allegations about LX, but he was the head of Equities Electronic Trading at Barclays, "the driving force behind the Company's goal to be the number one dark pool," and he "held himself [out] to the public as intimately knowledgeable about LX's functions and purported transparency."

> For instance, in February 2014, Barclays' dark pool was named the "Best Dark Pool" by an industry publication. White attributed its growth to "Barclays' commitment to being transparent about how Barclays operates, how Barclays routes client orders, and the kinds of counterparties traders can expect to deal with when trading in the dark pool." White stated that transparency was "the one issue that we really took a stance on . . . We always come back to transparency as the key driver — letting [clients] know how we're interacting with their flow and what type of flow they're interacting with." In addition, he stated that "[t]ransparency on multiple levels is a selling point for our entire equities franchise." At the same time, a former Barclays Director in the Equities Electronic Trading division informed the government that Barclays "purport[s] to have a toxicity framework that will protect you when *everybody knows internally* that the thing is done manually with outliers removed and things are classified only if they feel like it." Corroborating this Director's account, another former Director in the division described Liquidity Profiling as "a scam."

*Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 351 (S.D.N.Y. 2015).As the court concluded, "[g]iven the alleged nature of the fraud—whereby Barclays was touting the safety of LX while at the same time courting predatory firms—the common knowledge within the group about the fraud, and the importance of Barclays' reputation to the company's continuing success, White either knew or should have known that the disclosure of the fraud would harm shareholders." *Strougo*, 105 F. Supp. 3d at 351.

Ultimately, however, as this Court held in *Kaplan*, "[t]hese issues entail matters that implicate states of mind and application of objective standards of reasonable behavior -- all of which constitute determinations that fall within the province of the jury." 1:12-cv-09350-VM-KNF, slip op. at 7.

---

Johnson Dep. Tr., March 23, 2016, 38:25; 39:2-23; 111:2-21; Schmitz Dep. Tr., March 30, 2016, 30:4-25; 31:2-18; 54:12-23; 71:2-13.

[2] Plaintiffs are happy to provide copies of any of the referenced deposition transcripts, including those referenced in other letters faxed contemporaneously herewith, upon the Court's request.

Hon. Victor Marrero
May 11, 2018
Page 3



**There are genuine disputes of fact regarding whether Defendant White is a control person under Section 20(a).** As stated in the letter response to Defendant Barclays' May 9, 2018 letter, contemporaneously provided to the court, there are genuine disputes of fact regarding the primary Section 10(b) violation. Defendant White has conceded that he is a culpable participant and only challenges whether "he exercised control over the primary violator." Given that Defendant White *is a primary violator,* this element of the Section 20(a) claim is clearly met. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.,* No. 02-cv-5571 (RJH), 2004 U.S. Dist. LEXIS 7015, at * (S.D.N.Y. Apr. 21, 2004). Moreover, as the Head of Equities Electronic Trading at Barclays Capital Inc., Defendant White oversaw LX and had ultimate authority over all employees involved in LX operations.

Moreover, absent from all of the Defendants' letters is the recognition that they Defendants admitted to most of the misconduct described in the Complaint, and to violations of the federal securities laws, in a Settlement Agreement with the New York Attorney General ("NYAG")[3] and in a "Cease and Desist Order" with the Securities and Exchange Commission[4], dated January 31, 2016.

As there are genuine disputes of fact regarding every issue identified in the Letter, Plaintiff's respectfully request that this Court deny Defendant's May 9, 2018 pre-motion request.

Respectfully submitted,

/s/Jeremy A. Lieberman
Jeremy Lieberman
600 Third Avenue, 20th Floor
Tel: (212)-661-1100
Fax: (212)-661-8665
Email: taweinrib@pomlaw.com

cc:    All counsel of record

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Plaintiff class representatives.
>
> **SO ORDERED.**
>
> 5-14-18
> DATE            VICTOR MARRERO, U.S.D.J.

---

[3] http://www.ag.ny.gov/pdfs/2016.2.1_Final_Signed_Barclays_Settlement_Agreement.pdf.
[4] https://www.sec.gov/litigation/admin/2016/33-10010.pdf.