# POMERANTZ LLP

Jeremy A. Lieberman
Managing Partner

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/18
```

May 11, 2018

**VIA FACSIMILE**

Hon. Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *Strougo v. Barclays PLC, et al.*, No. 14-cv-5797 (S.D.N.Y.)

Dear Judge Marrero:

Pursuant to Part II.A.2 of Your Honor's Individual Practices, Class Representatives Mohit Sahni and Joseph Waggoner, individually and on behalf of all others similarly situated, (Plaintiffs), oppose Defendants' May 9, 2018 letter request for a pre-motion conference seeking permission to file a summary judgment motion ("Letter"). As Your Honor recently held in *Kaplan, et al. v. S.A.C. Capital Advisors, L.P., et al.*, and as is also true here, "summary judgment motions at this stage would be wasteful and only delay resolution of the case." 1:12-cv-09350-VM-KNF, slip op. at 5 (S.D.N.Y. May 4, 2016). There are genuine disputes of fact as to each issue raised in the Letter, which "are more appropriately left for jury determination." *Id.* at 6. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact …") Further, a court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See, e.g., Goldstein v. Solucorp Indus., Ltd.*, No. 11 CV 6227 VB, 2015 WL 6143813, at *3 (S.D.N.Y. Oct. 16, 2015).

***There are genuine disputes of fact regarding materiality.*** Defendants resort to mischaracterizations of both the Second Circuit's November 6, 2017 order ("Order") and Plaintiffs' theory of liability, which has remained unchanged throughout this litigation, to argue that there is no genuine dispute of fact regarding materiality. Not so. The Second Circuit did not find that Plaintiffs had solely based their theory of the case on omissions nor did it dismiss any of the omissions from the case. The Second Circuit simply ruled that *Affiliated Ute* did not apply because Plaintiffs "allege[] numerous affirmative misstatements" and "are therefore not in a situation in which it is impossible for them to point to affirmative misstatements."[1] *Waggoner v.*

---

[1] The Court also cautioned, citing its prior holding in *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88 (2d Cir. 1981), that "the labels "misrepresentation" and "omission" "are of little help" because in "many instances, an omission to state a material fact relates back to an earlier statement, and if it is reasonable to think that that prior statement still stands, then the omission may also be termed a misrepresentation."

jalieberman@pomlaw.com

600 Third Avenue, New York, New York 10016  tel: 212.661.1100  www.pomerantzlaw.com

NEW YORK    CHICAGO    LOS ANGELES    PARIS

325

Hon. Victor Marrero
May 11, 2018
Page 2



*Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017). Its ruling had nothing to do with the materiality or actionability of the omitted facts. Indeed, the Court recognized that "Plaintiffs focus their claims on those affirmative misstatements," which it labelled half-truths, and that the omitted facts are "directly related to the earlier statements Plaintiffs also claim are false." *Waggoner*, 875 F.3d at 96 ("For example, the Plaintiffs argue that Barclays failed to disclose that Liquidity Profiling did not apply to a significant portion of the trades conducted in LX. That "omission" is simply the inverse of the Plaintiffs' misrepresentation allegation: Barclays' statement that Liquidity Profiling protected LX traders was false.")

Defendants' challenge to materiality (including falsely claiming that Plaintiffs conceded the misstatements are immaterial) is based entirely on the faulty notion that the omissions are no longer part of the case. For that reason alone, summary judgment on this issue is inappropriate. Plaintiffs' theory of fraud has always been, and still is, that Defendants issued misstatements concerning their operation of Barclays' dark pool ("LX") (in particular regarding transparency and safeguards to protect LX clients from predatory trading) while failing to disclose that they failed to police LX for toxic trading, Barclays' Liquidity Profiling tool--- a purported safeguard to protect against predatory trading-- did not function as represented, Barclays altered marketing materials to omit reference to the largest high frequency trader ("HFT") in LX and to deemphasize the presence of electronic liquidity providers ("ELPs") generally (traders that typically engage in predatory trading), preferentially routed dark orders to LX, and constructed the national best bid and best offer using a combination of direct feeds and the securities information processor ("SIP") which omitted the NYSE and EDGX direct feeds. That theory of fraud has never "pivoted" nor does the Order foreclose that theory or undermine materiality.

Moreover, as the court held in the motion to dismiss order, the misleading statements are material because they directly implicated Barclays' integrity and reputation given its past misconduct, regardless of how much LX contributed to the bank's income. *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015).[2] This is consistent with empirical studies that have shown that the "reputational" loss resulting from misconduct is generally far greater than its bottom line impact. *See* Jonathan M. Karpoff, *The Cost of Cooking the Books*, Journal of Financial and Quantitative Analysis, 43 (September 2008), 581-612. Defendants' claim that fraudulent statements regarding their operation of LX have "nothing to do with Barclays' integrity" is as troubling as it is wrong. *See Strougo*, 105 F. Supp. 3d at 349 (""the specific misstatements about LX — which include touting its safety while secretly encouraging predatory behavior — call into question the integrity of the company as a whole.") The materiality of the undisclosed facts is also clear based on the "significant…negative market reaction" following the corrective disclosure. *Strougo*, 105 F. Supp. 3d at 349 (citing SAB No. 99). The only company specific announcements on June 25, 2014 concerned the NYAG's complaint against Barclays for the very misconduct alleged in this action. As they have in previous filings, though no court has

---

[2] Moreover, the District Court never actually held that the misleading statements were *quantitatively immaterial* but rather that the fact that "the revenue of LX relative to Barclays' overall business is fractional" makes it "**debatable**." *Strougo v. Barclays PLC*, 312 F.R.D. 307, 319 (S.D.N.Y. 2016). Issues that are "debatable" are not appropriate for summary judgment.

Hon. Victor Marrero
May 11, 2018
Page 3



ever credited their argument, Defendants claim that the price decline does not demonstrate materiality because it resulted from investor concerns over regulatory scrutiny and litigation risk, which they illogically deem unrelated to the fraudulent conduct alleged in this case, though it is the very subject of the regulatory scrutiny and litigation risk. They similarly attempt to separate the revelation that Barclays did not operate LX in the manner it represented from the lack of integrity that disclosure uncovered and then argue that investors already knew Barclays lacked integrity because of its past scandals. It is the fact of its past scandals, among other things, that caused investors to place great importance on Barclays' integrity particularly in light of Barclays' assurances following those scandals that it would restore its integrity and "conduct business in the right way."[3] As such, a genuine issue of fact exists regarding the materiality of the misleading statements.

***There are genuine disputes of fact regarding reliance.*** Defendants' sole attack on reliance presumes that there is no materiality. Given that there is a genuine dispute of fact regarding materiality, and Defendants have conceded that the other elements of the *Basic* presumption of reliance are met (as they must in light of the Second Circuit's Order) summary judgment is inappropriate on the issue of reliance as well.

***There are genuine disputes of fact regarding loss causation and damages.*** The price of Barclays' ADS plummeted on June 26, 2014 following the disclosure of the NYAG action, which alleges the very misconduct at issue here. Though Defendants persist in their stance that the regulatory action and any resulting implications are unrelated to the allegations of fraud that caused them, simply stating they are unrelated does not make it so. *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (*citing Matsushita*, 475 U.S. at 587)(Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."). As Plaintiffs' expert testified, the regulatory action and any expected fines are all inextricably intertwined with the allegations and disclosure of fraud. At minimum, they are materializations of risk caused by Defendants' misconduct. Nye Dep. Tr., June 16, 2016, 11:16-23. Curiously, Defendants' Letter cites to *Fed. Housing Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 155 (2d Cir. 2017), where defendants' argued that there was no loss causation because macroeconomic forces contributed to the loss. However, as the Second Circuit recognized, "macroeconomic forces and the ProSupps' misstatements *were intimately intertwined.* The financial crisis may have been an important step in between the ProSupps' misstatements and the Certificates' losses, but all three events were linked together in the same causal chain.")." The same is true here.

For the foregoing reasons, Plaintiff's respectfully request that this Court deny Defendants' May 9, 2018 pre-motion request.

---

[3] Defendants' claim that they had no duty to disclose "corporate mismanagement or uncharged conduct" is also simply wrong. Defendants had a duty to ensure that their statements about LX and client protection were not misleading.

Hon. Victor Marrero
May 11, 2018
Page 4



Respectfully submitted,

/s/Jeremy A. Lieberman
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
Tel: (212)-661-1100
Fax: (212)-661-8665
Email: jalieberman@pomlaw.com

cc: All counsel of record

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by *plaintiff class representatives*.

**SO ORDERED.**

5-14-18
DATE          VICTOR MARRERO, U.S.D.J.