# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022

Andrew M. Genser
To Call Writer Directly:
(212) 446-4809
andrew.genser@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

May 9, 2018

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/15/18
```

**Facsimile**

The Honorable Victor Marrero
Daniel Patrick Moynihan United States Courthouse,
500 Pearl Street,
New York, New York 10007-1312

Re: *Strougo v. Barclays, PLC, et al.*, No. 14-cv-05797-VM (S.D.N.Y.)

Dear Judge Marrero:

Pursuant to Part II.A.2 of Your Honor's Individual Practices, Defendant William White respectfully requests a pre-motion conference regarding his anticipated motion for summary judgment on the issues of scienter and control-person liability. Mr. White also joins the letters submitted on May 9, 2018, by Defendants Barclays PLC and Barclays Capital Inc. (together, "Barclays") and Defendants Robert Diamond and Antony Jenkins (together with White, "Defendants"). Mr. White requests permission for all Defendants to file a joint motion for summary judgment of not more than 40 pages.

***There is no disputed issue of material fact that Mr. White did not act with the requisite scienter.*** Section 10(b) of the Securities Exchange Act of 1934 requires Plaintiffs to show that Defendants acted with "'a mental state embracing intent to deceive, manipulate, or defraud.'" *Dodona I, LLC v. Goldman Sachs & Co.*, 132 F. Supp. 3d 505, 511 n. 6 (S.D.N.Y. 2015) (Marrero, J.) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)). In particular, this mental state must be "an intent to defraud [Barclays' American Depositary Shares ("ADS") investors] rather than some other group." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). There is nothing in the record to show that *any* Defendant—including Mr. White—acted with intent to deceive *ADS holders*.[1] Indeed, the entirety of discovery was focused on statements made to LX *customers* and their potential impact on those customers.[2] Faced with the

---

[1] Nor, for that matter, have Plaintiffs offered evidence showing that Mr. White intended to deceive LX clients.

[2] In fact, Plaintiffs did not ask a single question to a single witness about their intent as to Barclays' shareholders, and there is nothing in the record to support a finding that any Barclays employee acted with intent to deceive, manipulate, or defraud ADS investors.

Beijing   Boston   Chicago   Hong Kong   Houston   London   Los Angeles   Munich   Palo Alto   San Francisco   Shanghai   Washington, D.C.

## KIRKLAND & ELLIS LLP

Honorable Victor Marrero
May 9, 2018
Page 2

fact that none of the remaining statements was made to Barclays' ADS holders, Plaintiffs claim that statements made to Barclays clients in LX—a business that generated less than one-tenth of one percent of revenue for Barclays—were relevant to ADS holders because of the alleged importance that these investors placed on Barclays' "integrity" in light of past scandals. But relevance to shareholders is beside the point. Scienter is about the *defendant's* state of mind, not what may have been relevant to a shareholder. *See, e.g., Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001) (rejecting the argument that intent to defraud counterparty in corporate transaction demonstrated an intent to defraud shareholders merely because "investors would . . . want to know the same information"); *ECA*, 553 F.3d at 203 (holding that a motive to "[defraud] other institutions for the purposes of gaining at the expense of those institutions" would not constitute a motive to defraud corporation's own investors); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 368-69 (S.D.N.Y. 2014) (declining to interpret alleged intent to defraud creditors as intent to defraud shareholders). Were the Court to accept Plaintiffs' theory, it would collapse the scienter requirement into the materiality requirement.

In any event, as Barclays notes in its letter, there is no evidence that a single ADS investor placed any importance on Barclays' so-called "integrity," and the alleged misstatements relating to integrity have been dismissed. In reality, Plaintiffs' theory of fraud is that Barclays had a duty to disclose that it was "not acting with integrity" about any aspect of its business—whether or not that part of Barclays' business was actually material to investors. As Barclays shows in its letter, though, the Second Circuit has rejected such a duty and has made clear that a company need not accuse itself of wrongdoing.

Plaintiffs offer no evidence that Mr. White acted with the intent, knowledge, or recklessness required to satisfy the scienter requirement. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008). Plaintiffs cannot cite a single piece of Mr. White's deposition testimony that shows that Mr. White exhibited subjective intent, knowledge, or recklessness. Instead, Plaintiffs can point only to the testimony of other deponents, but such testimony is irrelevant—it is simply surmise and conjecture about Mr. White's mental state. (*See, e.g.,* Giordano Dep. Tr., Mar. 18, 2016, 70:14-19 (source of "management pressure" for overrides "could be Bill White"); *id.* 106:23-25 (testifying, with respect to claims that clients wanted certain routing behavior to stop, that she "didn't hear it discussed with Mr. White");[3] Alexander Dep. Tr. Mar. 2, 2016, 21:18-22 (stating that he "assume[d] nothing was done without [Mr. White's] blessing" as "[t]hat's typically how things worked"); *id.* 123:7-10 ("I'm sure Bill White was aware. But I didn't talk to him.")). Courts in this Circuit have consistently held that such evidence is insufficient to support a finding of scienter. *See, e.g., Campo v. Sears*

---

[3] Ms. Giordano did testify on occasion that she discussed certain issues with Dave Johnsen, and that she thought Mr. Johnsen would "always relay our conversations to Bill White." (Giordano Dep. Tr., Mar. 18, 2016, 117:8-11.) This, too, is merely conjecture, and Plaintiffs themselves failed to elicit from Mr. Johnsen any testimony that he conveyed any of these conversations to Mr. White.

## KIRKLAND & ELLIS LLP

Honorable Victor Marrero
May 9, 2018
Page 3

*Holdings Corp.*, 635 F. Supp. 2d 323, 336 (S.D.N.Y. 2009) ("[G]eneric and conclusory allegations based upon rumor or conjecture are undisputedly insufficient to satisfy the heightened pleading standard of 15 U.S.C. § 78u-4(b)(1)."). In any event, such allegations concern statements to LX clients, not investors in Barclays' ADS.

Recognizing this, Plaintiffs have argued that Mr. White acted with scienter based on testimony that he oversaw the LX business. (*See, e.g.*, White Dep. Tr., Mar. 29, 2016, 24:4-6 (Mr. White said he "t[ook] over the operation of Barclays['] dark pool" in 2011); Sharma Dep. Tr., Jan. 27, 2016, 24:10-15 (Mr. White was "in charge of the business aspect" of the dark pool)). But oversight responsibility is not enough to prove scienter. *See In re Satyam Comput. Servs. Ltd. Secs. Litig.*, 915 F. Supp. 2d 450, 479 (S.D.N.Y. 2013) (holding general oversight responsibilities are not enough even at the motion to dismiss stage); *Lipow v. Net 1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) (allegations that Defendants "must have had actual knowledge ... because of their positions at Net 1 ... cannot support an inference of scienter where none exists."). Plaintiffs also argue that Mr. White did not want Barclays employees to be "transparent" (*see* Alexander Dep. Tr. Mar. 2, 2016, 62:11-20 (stating that Barclays did not like his work because of "the transparency")). Even if this were true (it is not), it is insufficient to prove scienter because it does not relate to any of the alleged misstatements at issue. *See In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 418 (S.D.N.Y. 2003) (rejecting finding of scienter because knowledge of certain manipulation was "too far removed from the fraud underlying the false statements in the SEC filings to put those defendants on notice of those frauds.").

***There is no disputed issue of material fact that Mr. White was not a control person for purposes of section 20(a).*** In order to prove control person liability under section 20(a), plaintiffs must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Communic'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). *First*, as explained above and in the letter submitted by Barclays, there is no disputed issue of material fact that Barclays did not commit a primary violation. *Second*, there is no evidence to support the proposition that Mr. White exercised control over the primary violator. At most, Plaintiffs can point to general oversight responsibilities, but not active involvement or control over the conduct at issue. *See In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2011) ("Allegations of influence are not the same as the power to direct the management and policies of the primary violator."); *In re Adelphia Communic'ns Corp. Secs. & Deriv. Litig.*, 398 F. Supp. 2d 244, 262 (S.D.N.Y. 2005) ("A person's status as an officer . . . absent more, is not enough to trigger liability under § 20.").

There is no dispute on a genuine issue of material fact because Plaintiffs have failed to adduce evidence to support their novel theory of fraud. Mr. White respectfully submits that summary judgment is appropriate.

## KIRKLAND & ELLIS LLP

Honorable Victor Marrero
May 9, 2018
Page 4

                                                  Respectfully submitted,

                                                  /s/ Andrew M. Genser
                                                  Andrew M. Genser

cc:    All counsel of record (via e-mail)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendant William White.

SO ORDERED.

5-14-18

VICTOR MARRERO, U.S.D.J.