| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 5/15/18 |

ORIGINAL

May 9, 2018

Via Facsimile

Hon. Victor Marrero,
   Daniel Patrick Moynihan United States Courthouse,
     500 Pearl Street,
       New York, New York 10007-1312.

         Re:   *Strougo v. Barclays PLC, et al.*, No. 14-cv-05797-VM (S.D.N.Y.)

Dear Judge Marrero:

     Defendants Barclays PLC and Barclays Capital Inc. ("Barclays") respectfully request a pre-motion conference regarding their anticipated motion for summary judgment. Although Defendants submitted a summary judgment pre-motion letter on July 29, 2016, Barclays submits this letter to address the Second Circuit's November 6, 2017 class certification decision, in which the Circuit rejected Plaintiffs' omission theory of liability—which Plaintiffs claimed was "the heart of this case"[1]—and their attempt to invoke the *Affiliated Ute* presumption of reliance. After the Circuit's ruling, Plaintiffs' only remaining claim is that certain of Barclays' statements concerning its dark pool, LX, ("LX Statements") purportedly "maintained" the price of Barclays' ADS at levels reflecting investor confidence in Barclays' "integrity." But, there is no evidence that investors considered these statements material, or that they valued Barclays' ADS based on "integrity." Indeed, Plaintiffs already conceded to the Circuit that these "affirmative statements" were immaterial. Thus, there are no triable issues of fact on key elements that Plaintiffs are required to prove, and Barclays is entitled to summary judgment. Barclays requests permission for Defendants to file a joint summary judgment brief of not more than 40 pages.[2]

     ***The alleged misstatements are immaterial.*** Plaintiffs' only remaining claims are based on alleged misstatements concerning LX that are indisputably immaterial. In April 2015, Judge Scheindlin dismissed the majority of the alleged misstatements in the Complaint because they were inactionable puffery or immaterial as a matter of law. The categories of misstatements dismissed were: (1) statements concerning business practices and risk controls, such as Barclays' pledge "to increase transparency and conduct [its] business in the right way" after "serious and widespread" misconduct involving alleged manipulation of LIBOR was announced in June 2012, and (2) statements regarding the Salz Report, such as Barclays aspiring to improve its "control and compliance culture" and restore its integrity. (ECF No. 38 at 22-30.) The Court also recognized that the remaining LX Statements were quantitatively immaterial as a matter of law, because "LX accounted for 0.1% of Barclays revenue" (*id.* at 35 & n.119), but allowed claims based on those statements to proceed because, given "Barclays' past scandals, its efforts to restore its reputation, and . . . misrepresentations that go to the heart of the firm's integrity and reputation," Judge Scheindlin could not, at the motion to dismiss stage, "conclude as a matter of law" that the statements were qualitatively immaterial. (*Id.* at 35-36.)

     In response to those rulings, Plaintiffs pivoted their entire case, arguing that, "because LX accounted for a small fraction of Barclays' business, it is the *omitted* facts of unethical conduct that a reasonable investor would have found material, *not its affirmative*

---

[1] Pls.' Br. at 9, 15, 49, *Waggoner v. Barclays PLC*, No. 16-1912 (2d Cir. Aug. 29, 2016) ("Pls.' Br.").

[2] Defendants Jenkins and Diamond, jointly, and White have also submitted pre-motion letters. Barclays joins White's request for summary judgment on the ground that there is no evidence that Defendants acted with scienter.

MAY-10-2018 10:57AM From:3849　　　　3021　　　　To:9121280556382　　　Page:3/5
Case 1:14-cv-05797-VM   Document 114   Filed 05/15/18   Page 2 of 4

Hon. Victor Marrero                                                    -2-

*statements.*" Pls.' Br. at 49 (emphasis added). But the Second Circuit rejected Plaintiffs' attempt to change their case from a misstatement action to one based on omissions, holding that *Affiliated Ute* does not "apply to misstatements whose only omission is the truth that the statement misrepresents." *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017).

Following this decision, Plaintiffs are not only prevented from pursuing an omissions case, they also can no longer pursue their affirmative misstatement case, because they have conceded—in their briefs and at oral argument before the Second Circuit—that "*investors would not have found the affirmative misstatements material.*" Pls.' Br. at 15 (emphasis added); *see also* Oral Arg. Tr. at 28:16-22 ("LX was immaterial to the company's financials. It was their illegal conduct and unethical conduct that was being hidden which was really material.") And even if Plaintiffs had not so conceded, they cannot prove materiality: this Court has already ruled that the LX Statements were *quantitatively* immaterial as a matter of law (ECF No. 38 at 35 n.119), and Plaintiffs have no *evidence*—documentary, testimonial, or expert—to support their argument that the LX Statements were *qualitatively* material because they affected investors' views of Barclays' firm-wide "integrity" in light of prior scandals. (*See* Pls.' Aug. 2, 2016 Letter, at 2.) Plaintiffs have argued that the LX Statements "maintained the price of Barclays' securities at levels that reflected investor confidence in the integrity of the Company." Pls.' Br. at 3. But the LX Statements could not have "maintained" the price of Barclays ADS because Plaintiffs admit that they were immaterial and there is no evidence that Barclays' investors considered these statements when making their investment decisions. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466-67 (2013) ("immaterial information, by definition, does not affect market price"). Moreover, the LX Statements had nothing to do with Barclays' "integrity"—they concerned the manner in which Barclays operated specific tools offered to LX clients to manage exposure to aggressive trading in the dark pool. *See Dodona I, LLC v. Goldman Sachs & Co.*, 132 F. Supp. 3d 505, 514-17 (S.D.N.Y. 2015) (granting summary judgment where plaintiffs' evidence was unrelated to the actionable claims).[3] Thus, Plaintiffs' "integrity" theory of fraud is merely a repackaged attempt to impose a duty to disclose corporate misconduct—a "duty" that has been firmly rejected by the Second Circuit. *See City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) ("As we have explained, disclosure is not a rite of confession and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing.") (alterations and quotations omitted).[4]

Even if the LX Statements concerned Barclays' integrity, Plaintiffs offer no evidence to show that investors considered "integrity" when investing in Barclays' ADS. Plaintiffs do not point to a *single* news report, analyst report, or any testimony suggesting that Barclays' ADS investors valued the company during the Class Period based on the vague concept of "integrity."

Finally, the decline in the price of Barclays' ADS on the announcement of the action by, and related press statements of, the now-former NYAG does not, as Plaintiffs claim, provide evidence of the materiality of the LX Statements. Defendants' expert has demonstrated that the price decline reflected investor concerns about regulatory scrutiny and potential fines (*see* James Report, Apr. 27, 2016 ¶ 36-46), but the Court need not address that question because Plaintiffs' own allegations and evidence undermine their position. Plaintiffs contend that the price fell, not

---

[3] In any event, the evidence in the record does not show that the LX Statements were actually false or misleading.
[4] The Second Circuit has also rejected attempts by plaintiffs to create such a duty using past statements regarding the "integrity" of a company or a line of business. *See, e.g., Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012).

MAY-10-2018 11:01AM From:2849         3021            To:912128056382          Page:4/5
Case 1:14-cv-05797-VM   Document 114   Filed 05/15/18   Page 3 of 4

Hon. Victor Marrero                                                                      -3-

because Barclays was operating LX differently than described, but because Barclays' "lack of integrity" was revealed. (*See* Pls.' Br. at 3.) But, at the same time, Plaintiffs claim that prior "scandals" had already removed investors' sense that Barclays was acting with integrity. For example, Plaintiffs argue that news of Barclays' LIBOR settlements in June 2012 (ten months *after* the start of the Class Period) "led to reputational damage and a loss of public trust." (ECF No. 43 ¶¶ 2, 25 (quotations omitted).) And Plaintiffs' expert's regression analysis found a statistically significant drop in the price of Barclays' ADS after the LIBOR settlement was announced. (Nye Report, July 24, 2015, Ex. 12A at 5.) Plaintiffs' expert also cited to the London Gold Fix "scandal" that was disclosed in May 2014—one month before the NYAG complaint. (Nye Report, Apr. 27, 2016 ¶¶ 11-13.) Thus, plaintiffs' own evidence would demonstrate that, to the extent investors were inclined to base decisions about the bank's "integrity" on the fact of regulatory proceedings involving the bank, any value attributed to such integrity dissipated before the NYAG's action. Thus, even accepting Plaintiffs' integrity theory at face value, any supposed lack of integrity that regulatory actions can reveal would have been known to the market and therefore immaterial when the NYAG filed its complaint on June 25, 2014. And, while Barclays stands by the statements it made concerning the remedial steps that it has taken since 2012, any allegations that Barclays promised to restore its integrity after these scandals are irrelevant, as this Court already held that such statements are immaterial as a matter of law (ECF No. 38 at 22-30), and plaintiffs have pointed to no such statements between the announcement of the Gold Fix "scandal" in May 2014 and the NYAG's complaint in June 2014.

*Plaintiffs cannot demonstrate reliance.* Materiality is a necessary element of the *Basic* presumption of reliance. *See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). Although materiality is not evaluated at the class certification stage, it is appropriately considered on a motion for summary judgment. Because the LX Statements here are immaterial, the *Basic* presumption cannot apply, and Plaintiffs—who have conceded that they did not actually rely upon the LX Statements—have no viable method to prove reliance.

*Plaintiffs cannot to demonstrate loss causation or discernible damages.* Plaintiffs offer no evidence to show "that the decline in the market price of Barclays' ADS was due to the [alleged] fraud, as opposed to other market factors." *Gordon Partners v. Blumenthal*, 293 F. App'x 815, 817 (2d Cir. 2008). As discussed above, Plaintiffs' argument that other "scandals" damaged Barclays' reputation during the Class Period forecloses Plaintiffs' theory that Barclays' ADS price was maintained at artificial levels reflecting investor confidence in its integrity. Thus, Plaintiffs cannot show that an alleged fraud concerning Barclays' integrity caused any decline in Barclays' ADS price in June 2014. Moreover, both parties' experts agreed that the complaint— "a regulatory action which includes a potential fine"—and accompanying statements in the press by the now-former NYAG, were a "concern to the market" that caused the price of Barclays' ADS to decline. (Nye Dep. Tr., June 16, 2016, 8:22-9:3; *see also* James Report, Apr. 27, 2016 ¶ 45.) Yet Plaintiffs' expert has proposed no method to separate losses caused by those concerns from purported losses caused by the alleged misstatements. In fact, Plaintiffs offer no evidence to suggest that investors in Barclays' ADS had *any* reaction to the LX Statements. Under Section 10(b), Plaintiffs are required to separate "loss attributable to a specific misstatement from loss attributable to [other causes]," because it is Plaintiffs' burden to prove loss causation. *Fed. Housing Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 155 (2d Cir. 2017); *see also In re Omnicom Grp. Sec. Litig.*, 541 F. Supp. 2d 546, 553 (S.D.N.Y. 2008). Plaintiffs have made no attempt to do so here—summary judgment should therefore be granted.

Hon. Victor Marrero -4-

Sincerely,

Jeffrey T. Scott
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3082
scottj@sullcrom.com

cc: All counsel of record (via e-mail)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by *The Barclays defendants*.

**SO ORDERED.**

5-14-18
DATE　　　VICTOR MARRERO, U.S.D.J.