```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BARBARA STROUGO, et al.,            :
                                    :
                    Plaintiffs,     :    14 Civ. 5797 (VM)
                                    :
       - against -                  :    DECISION AND ORDER
                                    :
BARCLAYS PLC, et al.,               :
                                    :
                    Defendants.     :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Lead plaintiff Barbara Strougo, individually and on behalf of a class of investors (collectively, "Plaintiffs"), brought this action alleging securities fraud against defendants Barclays PLC, Barclays Capital, Inc. (together with Barclays PLC, "Barclays" or the "Company"), Robert Diamond ("Diamond"), Antony Jenkins ("Jenkins"), Christopher Lucas, Tushar Morzaria, and William White ("White," and collectively, "Defendants"). (See "Complaint," Dkt. No. 1.) By letters dated May 9, 2018, Defendants requested permission to file motions for summary judgment. (See Dkt. Nos. 111, 113, 114.) Plaintiffs opposed by letters dated May 11, 2018. (See Dkt. Nos. 108-110.) For the reasons discussed below, Defendants' request for a pre-motion conference to seek leave to file summary judgment motions is denied.

## I. BACKGROUND

On December 15, 2014, Plaintiffs filed an amended complaint. (See "Amended Complaint," Dkt. No. 20.) Defendants' motion to dismiss the Amended Complaint was denied by Judge Scheindlin on April 24, 2015 (see Dkt. No. 38), and Plaintiffs filed a Second Amended Complaint on May 27, 2015 (see "SAC," Dkt. No. 43). Plaintiffs then sought class certification which was granted by Judge Scheindlin on February 2, 2016. (See Dkt. No. 78.) That decision was appealed by Defendants, and affirmed by the Second Circuit Court of Appeals on November 6, 2017. See Waggoner v. Barclays PLC, 875 F.3d 79 (2d Cir. 2017).

In the SAC, Plaintiffs allege that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), by secretly advantaging high frequency traders who used the Company's "dark pool," or alternative trading system. (See SAC ¶¶ 4, 9.) That system, essentially a private venue for trading securities, is known as Barclays's Liquidity Cross or Barclays's LX ("LX"). (See id. ¶ 4.) Dark pools like LX permit investors to trade securities in a largely anonymous manner. (See id.) To address concerns that high-frequency traders may have been "front running" or "trading ahead" of the market (detecting patterns involving large incoming trades and executing their own trades before

those incoming trades are completed), Barclays's officers made "numerous statements asserting that LX was safe from" the practice of front running. See Waggoner, 875 F.3d at 86-87.

On June 25, 2014, the New York State Office of the Attorney General ("NYAG") commenced an action alleging that Barclays violated the New York Martin Act, which, in pertinent part, prohibits securities fraud, by concealing material information regarding the operation of the Company's dark pool. (See SAC ¶ 5.) The next day, the price of Barclays's securities fell 7.38 percent. (See id. ¶ 6.) On the following day, news reports estimated that Barclays could face significant fines as a result of the NYAG's action, and on June 30, Barclays's stock price dropped an additional 1.5 percent. (See id. ¶ 7.)

The instant action was filed shortly thereafter, alleging that Barclays's statements about LX were materially false and misleading by omission because, contrary to its assertions, Barclays did not adequately protect its clients from high frequency trading activity or predatory traders, and Plaintiffs suffered losses as a result of Defendants' misstatements and omissions. (See, e.g., id. ¶¶ 4, 8.) With respect to White, Diamond, and Jenkins, Plaintiffs assert that the individual defendants exercised their power and

3

authority as "controlling persons" of Barclays within the meaning of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t ("Section 20(a)"), to cause Barclays to engage in the wrongful conduct described in the SAC. (See id. ¶ 221.)

By three letters dated May 9, 2018, Barclays, Diamond and Jenkins, and White requested a pre-motion conference regarding Defendants' proposed motions for summary judgment. (See Dkt. Nos. 111, 113, 114.) Plaintiffs opposed by three separate letters dated May 11, 2018. (See Dkt. Nos. 108-110.)

In seeking leave to file a motion for summary judgment, Barclays primarily argues for dismissal on the grounds that the alleged misstatements are immaterial. (See Dkt. No. 114.) In particular, Barclays argues that "Judge Scheindlin dismissed the majority of the alleged misstatements in the [Amended] Complaint because they were inactionable puffery or immaterial as a matter of law." (See id. at 1.) With respect to omissions, Barclays argues that Waggoner prevents Plaintiffs from pursuing an omissions (as opposed to affirmative misstatements) case. (See id. at 2.) Moreover, Barclays contends, Plaintiffs have conceded that the affirmative misstatements are not material, and even if that were not the case, Plaintiffs cannot prove materiality. (Id.) In particular, Barclays argues that Plaintiffs have no

4

evidence to support their argument that the statements regarding LX were qualitatively material because they affected investors' views of Barclays's firm-wide "integrity" in light of prior scandals at the Company. (See id.) Even if these statements did concern integrity, Barclays argues, Plaintiffs cannot show that investors considered "integrity" when investing in Barclays's securities. (See id.)

With respect to reliance, Barclays argues that because the alleged misstatements are not material, the Basic v. Levinson[1] presumption of reliance cannot apply, and Plaintiffs therefore cannot prove reliance. (See id. at 3.)

Finally, Barclays argues that Plaintiffs cannot prove damages because they cannot show that the alleged fraud caused any decline in Barclays's share price. (See id.)

White joins in Barclays's motion and adds two additional arguments: (1) White did not act with the requisite scienter, and (2) White was not a control person for purposes of Section 20(a). (See Dkt. No. 113.)

Diamond and Jenkins join in the motions of Barclays and White, and also add two additional arguments: (1) Diamond and Jenkins did not "culpably participate" in the alleged fraud,

---

[1] 485 U.S. 224 (1988).

and (2) Diamond and Jenkins did not "control" White. (See Dkt. No. 111.)

Plaintiffs oppose Defendants' motions on the grounds that there are genuine disputes of material fact as to every issue raised by Defendants, and thus summary judgment would be unwarranted. First, Plaintiffs argue that a genuine factual dispute exists regarding the materiality of the misleading statements. In particular, Plaintiffs argue that the Court of Appeals neither found that Plaintiffs have based their case exclusively on omissions, nor dismissed any of the omissions from the case. (See Dkt. No. 110 at 1.) Plaintiffs also argue that, as Judge Scheindlin previously held in addressing Defendants' motion to dismiss, the misleading statements alleged in the SAC are material because they "directly implicated Barclays's integrity and reputation given its past misconduct, regardless of how much LX contributed to the bank's income." (See id. at 2.) Second, Plaintiffs argue that Defendants' "sole attack on reliance presumes that there is no materiality," and given that there are genuine factual disputes regarding materiality, summary judgment is likewise inappropriate on the issue of reliance. (Id. at 3.) Finally, Plaintiffs argue that there are genuine disputes of material fact regarding loss causation and damages. (See id.)

6

With respect to White's arguments, Plaintiffs contend that there are genuine disputes of material fact regarding whether or not White acted with the requisite scienter. (See Dkt. No. 108 at 1-2.) In particular, Plaintiffs argue that the issue of scienter necessarily implicates "states of mind and application of objective standards of reasonable behavior" -- determinations which fall squarely within the province of the jury. (See id. at 2.) Plaintiffs argue that there are also genuine disputes of material fact regarding whether White is a control person under Section 20(a). (See id. at 3.)

With respect to Diamond and Jenkins, Plaintiffs similarly assert that there are genuine disputes of material fact regarding (1) whether Diamond and Jenkins are "control persons" under Section 20(a), and (2) Diamond and Jenkins's culpable participation in the alleged fraud. (See Dkt. No. 109.)

## II.  DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the evidence shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

7

preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden is on the moving party to show that there are no open questions of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must then offer evidence of open questions of material fact and may "not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). All "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Based on its review of the parties' correspondence, the SAC, and other materials in the record, the Court is persuaded that several issues of disputed material fact would make summary judgment inappropriate here and likely result in a denial of such a motion if one were formally filed. Accordingly, summary judgment motion practice under these

circumstances would be needlessly wasteful of the parties' time and resources, and inconsistent with judicial economy.

A. MATERIALITY

Defendants argue that Plaintiffs are "prevented" from pursuing an omissions case, and that they can no longer pursue an affirmative misstatement case because they have conceded materiality. (See Dkt. No. 114 at 2.) With respect to omissions, the Court of Appeals held only that the district court erred by concluding that the Affiliated Ute presumption applies because the SAC is based "primarily" on allegations of affirmative misrepresentations, not omissions. See Waggoner, 875 F.3d at 95. Thus, nothing in the Waggoner opinion prevents Plaintiffs from pursuing an omissions case.

Moreover, Judge Scheindlin dismissed only certain allegations of the Amended Complaint concerning statements made by Barclays, including: (1) general statements regarding business practices and risk controls, and (2) statements responding to the Salz Report.[2] (See Dkt. No. 38 at 22-30.) But, with respect to misrepresentations regarding LX, Judge Scheindlin found that "the specific misstatements about LX -- which include touting its safety while secretly encouraging

---

[2] The Salz Report was commissioned in July 2012 to review Barclays's practices "with a view to providing a comprehensive roadmap for cultural change" at the Company; the final report was issued on April 3, 2013. (See Dkt. No 38 at 6.)

9

predatory behavior -- call into question the integrity of the company as a whole." (Id. at 35.) Judge Scheindlin concluded that the question of materiality could not be resolved in Defendants' favor at the motion to dismiss stage. (See id. at 36.) Moreover, the Court of Appeals recognized that the "Plaintiffs' complaint alleges numerous affirmative misstatements by the Defendants," Waggoner, 875 F.3d at 96, not all of which were dismissed by Judge Scheindlin.

Defendants also argue that Plaintiffs have "no evidence" to support their argument that the statements regarding LX were qualitatively material because they affected investors' views of Barclays's firm-wide "integrity" in light of prior scandals. (See Dkt. No. 114 at 2.) Plaintiffs counter that it is the past scandals, among other things, that "caused investors to place great importance on Barclays's integrity." (See Dkt. No. 110 at 3.) But these are precisely the types of factual disputes that are inappropriate for resolution on a motion for summary judgment, particularly in light of the fact that "[m]ateriality is an 'inherently fact-specific finding.'" See Litwin v. Blackstone Grp., L.P., 634 F.3d 706, 716 (2d Cir. 2011) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 236 (1988)). Therefore, summary judgment for Defendants as to materiality would be unwarranted and a motion so requesting likely would be denied.

10

B. RELIANCE

As Plaintiffs point out, Defendants' contention that Plaintiffs cannot prove reliance depends on a finding in their favor on materiality at summary judgment. (See Dkt. No. 110 at 3; Dkt. No. 114 at 3.) As a result, because the Court finds that there are genuine disputes of material fact with respect to materiality, the issue of reliance would be similarly inappropriate for resolution by summary judgment.

C. LOSS CAUSATION AND DAMAGES

The Court finds that genuine issues of disputed material fact exist also with regard to loss causation and damages. Defendants argue that Plaintiffs offer no evidence to show that the decline in the market price of Barclays's securities was due to the alleged fraud, as opposed to other market factors. (See Dkt. No. 114 at 3.) Plaintiffs counter that, as their expert testified, the drop in price of Barclays's securities following the disclosure of the NYAG's action is inextricably connected with the allegations of fraud in this case. (See Dkt. No. 110 at 3.) On this basis, the Court is persuaded that Defendants have not shown that there are no open questions of material fact with respect to loss causation and damages. Accordingly, summary judgment on this issue would be inappropriate.

11

D. CONTROL PERSON LIABILITY

"The issue of control is a complex factual question that necessitates a close examination of the parties' relationship." In re WorldCom, Inc., 377 B.R. 77, 107 (S.D.N.Y. 2007). Indeed, "[w]hether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." Id.

For these reasons, the question of control person liability is similarly not appropriate for resolution on summary judgment. Plaintiffs argue that White "oversaw LX and had ultimate authority over all employees involved in LX operations." (See Dkt. No. 108 at 3.) Even Defendants concede that Plaintiffs can point, at least, to White's "general oversight responsibilities." (See Dkt. No. 113 at 3.) These arguments demonstrate that whether or not Plaintiffs can ultimately prove control by White over the primary violator is an issue of fact inappropriate for resolution at the summary judgment stage.

The same is true with respect to Diamond and Jenkins. Defendants argue that there is no evidence that Diamond or Jenkins controlled White. (See Dkt. No. 111 at 3.) But Plaintiffs counter that as CEOs of Barclays during the Class

Period and signatories of Barclays's SEC filings, Diamond and Jenkins had the power to direct the management and policies of White, who oversaw LX. (See Dkt. No. 109 at 1.) These arguments raise genuine disputes of material fact making summary judgment inappropriate, particularly in light of the inherently factual nature of the inquiry. For these reasons, summary judgment for White, Diamond, and Jenkins as to control person liability would be inappropriate.

E. CULPABLE PARTICIPATION

Summary judgment would also be inappropriate with respect to the culpable participation of White, Diamond, and Jenkins. As a threshold matter, "the Second Circuit has particularly cautioned against drawing inferences in situations where 'intent is at issue.'" Weiss/Watson, Inc. v. Lange, No. 87 Civ. 0032, 1990 WL 33601, at *5 (S.D.N.Y. Mar. 21, 1990) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)).

Here, with respect to White, Defendants argue that there is no evidence to show that White acted with intent to deceive. (See Dkt. 113 at 1-3.) Plaintiffs, on the other hand, point to evidence that deponents, including White, testified to White's "direct oversight and involvement in LX and the misconduct at issue here." (See Dkt. No. 108 at 1.) Plaintiffs also note that Judge Scheindlin, in addressing Defendants'

13

motion to dismiss, found "strong circumstantial evidence of conscious misbehavior or recklessness on the part of White." (See id. at 2.)

With respect to Diamond and Jenkins, Defendants argue that there is no evidence that Diamond and Jenkins demonstrated culpable participation in the alleged misconduct. (See Dkt. No. 111 at 2-3.) Plaintiffs counter that there is "ample evidence" that Diamond and Jenkins were kept apprised of all areas of Barclays's business, including LX, and that they took responsibility for public messages issued both internally and externally at Barclays. (See Dkt. No. 109 at 2.) For example, Jenkins testified that as CEO, he held regular monthly management meetings in order to gain perspective into the condition of the Company so he could attest to the validity of Barclays's public filings, took steps to ensure that his statements were consistent with other public statements issued by Barclays, and maintained ultimate authority over every business segment within Barclays. (See id.) Plaintiffs assert that Diamond's responsibilities as CEO mirrored Jenkins's. (See id.)

Here too, the parties' arguments raise factual disputes regarding the culpable participation of White, Diamond, and Jenkins. Therefore, and in light of the caution the Court of Appeals has expressed in drawing inferences where intent is

14

at issue, summary judgment as to the culpable participation of White, Diamond, and Jenkins would be inappropriate.

With discovery completed and a motion for class certification granted, this matter, which has been on the Court's docket since filed in 2014, should be ready for trial. Formal summary judgment practice at this point would delay resolution of the merits by at least one year or longer, and, as indicated above, likely would do little more than bring the proceedings to the point at which they are now. The parties would be better served under the circumstances to use their resources to prepare for trial on the merits. If at the presentation of the Plaintiffs' case, Defendants still believe that no issues of material fact exist, they are free to move for judgment as a matter of law under Federal Rule of Civil Procedure 50 at that point.

### III. <u>ORDER</u>

For the reasons described above, it is hereby

**ORDERED** that the motions (Dkt. Nos. 111, 113, 114) of defendants Barclays PLC, Barclays Capital, Inc., Robert Diamond, Antony Jenkins, and William White for a pre-motion conference to request leave to file motions for summary judgment are **DENIED** without prejudice.

**SO ORDERED.**

Dated: New York, New York
17 July 2018

Victor Marrero
U.S.D.J.