```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BARBARA STROUGO, Individually and    :
on Behalf of All Others Similarly    :
Situated,                            :
                                     :
                        Plaintiffs,  :    14 Civ. 5797 (VM)
                                     :
            - against -              :    **DECISION AND ORDER**
                                     :
BARCLAYS PLC, et al.,                :
                                     :
                        Defendants.  :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/18

**VICTOR MARRERO, United States District Judge.**

Lead plaintiff Barbara Strougo, individually and on behalf of a class of investors (collectively, "Plaintiffs"), brought this action alleging securities fraud against defendants Barclays PLC, Barclays Capital, Inc. (together with Barclays PLC, "Barclays" or the "Company"), Robert Diamond ("Diamond"), Antony Jenkins ("Jenkins"), Christopher Lucas, Tushar Morzaria, and William White ("White," and collectively, "Defendants"). (See "Amended Complaint," Dkt. No. 20.) By letters dated May 9, 2018, Defendants requested permission to file motions for summary judgment. (See Dkt. Nos. 111, 113-114.) Plaintiffs opposed by letters dated May 11, 2018. (See Dkt. Nos. 108-110.) On July 17, 2018, the Court

1

issued an Order denying Defendants' request to file motions for summary judgment. (See "July 17 Order," Dkt. No. 120.)[1]

By letter dated July 31, 2018, Diamond and Jenkins (the "CEO Defendants") sought reconsideration of the July 17 Order. (See "July 31 Letter," Dkt. No. 122.) The CEO Defendants argue that the July 17 Order improperly relied on arguments made by Plaintiffs in their letter motion opposing summary judgment, and that, in fact, there is no record evidence of Diamond or Jenkins's culpable participation or control personal liability. As a result, according to the CEO Defendants, the claims against Diamond and Jenkins under Section 20(a) of the Securities Exchange Act of 1934 ("Section 20(a)"), 15 U.S.C. § 78t(a), should be dismissed.

The Court then held a telephone conference during which it heard arguments from the parties, and advised Plaintiffs to submit concrete evidence substantiating their argument that genuine disputes of material fact exist with respect to the Section 20(a) claims against Diamond and Jenkins. (See Dkt. Minute Entry for 8/8/2018.)

By letter dated August 14, 2018, Plaintiffs responded to the July 31 Letter. (See "August 14 Letter," Dkt. No. 123.) Plaintiffs largely rely on the same arguments advanced in

---

[1] The facts and procedural history are set forth in greater detail in the July 17 Order, familiarity with which is presumed.

2

their letter motion opposing summary judgment (see Dkt. No. 109): they argue that Diamond and Jenkins have provided no basis for the "extraordinary remedy" of reconsideration, particularly given that the CEO Defendants have offered no new legal or factual evidence in support of their claims. Plaintiffs assert that Diamond and Jenkins were "CEOs with ultimate authority over and involvement in the day-to-day management of Barclays' businesses." (Dkt. No. 123 at 8.) In support of their arguments, Plaintiffs submit (1) an email chain "demonstrating that Defendant White's department, which operated LX, prepared a document on high frequency trading for Defendant Jenkins during the Class Period" (id. at 6); (2) two "settlement agreements with both the [Securities and Exchange Commission] and the State of New York" allegedly demonstrating that Barclays admitted to having "engaged in unlawful conduct in violation of the federal securities laws" (id. at 8); and (3) Defendants' responses to Plaintiffs' requests for admission which purportedly "confirm[] the accuracy of [Defendants'] admissions" of unlawful conduct as outlined in the settlement agreements (id.).

By letter dated August 21, 2018, the CEO Defendants replied to the August 14 Letter. (See Dkt. No. 124.) The CEO Defendants argue that Plaintiffs cannot "meaningfully tie any of their arguments to actionable misstatements," and even if

3

they could, those arguments fail because Plaintiffs "cannot establish that Diamond or Jenkins controlled the statements or culpably participated in them." (Id. at 3.) The CEO Defendants assert that Plaintiffs "have attached no emails relating to Diamond and only a single email chain relating to Jenkins," in which Jenkins does not in fact participate. (Id. at 4 n.2.) According to the CEO Defendants, the email chain does not demonstrate that Jenkins actually received the primer on high frequency trading that is referenced therein. (Id.) The CEO Defendants also note that the two consent decrees between Barclays and regulators submitted by Plaintiffs do not mention Diamond and Jenkins, and that those consent decrees, in addition to Defendants' responses to Plaintiffs' requests for admission, are "irrelevant, inadmissible hearsay, and cannot be used as evidence against Diamond and Jenkins, who did not review, admit or adopt any part of them." (Id. at 2 n.1)

For the reasons set forth below, the motion of Diamond and Jenkins for reconsideration is GRANTED. On reconsideration, the motion of Diamond and Jenkins for summary judgment on the Section 20(a) claims is GRANTED.

# I. LEGAL STANDARDS

A. RECONSIDERATION

The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Reconsideration is governed by Local Rule 6.3 ("Rule 6.3"), which is "intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" See SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). A court must "narrowly construe and strictly apply" Rule 6.3 so as to "avoid duplicative rulings on previously considered issues," and prevent Rule 6.3 from being used to advance different theories not previously argued or as a substitute for appealing a final judgment. See Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). "[A] motion to reconsider

should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

The decision to grant or deny a motion for reconsideration rests within "'the sound discretion of the district court.'" Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (quoting Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)).

B. SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the evidence shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The burden is on the moving party to show that there are no open questions of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must then offer evidence of open questions of material fact

and may "not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). All "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

  C. CONTROL PERSON LIABILITY

In order to establish a prima facie case of liability under Section 20(a), a plaintiff must show: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation." Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996)).

"Control over a primary violator may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities,

by contract, or otherwise.'" First Jersey, 101 F.3d at 1472-73 (quoting 17 C.F.R. § 240.12b-2).

"Culpable participation" is established by alleging scienter on the part of a controlling person to the extent that it would satisfy § 10(b) and Rule 10b-5. CAMOFI Master LDC v. Riptide Worldwide, Inc., No. 10 Civ. 4020, 2012 WL 6766767, at *11 (S.D.N.Y. Dec. 17, 2012); see also Tongue v. Sanofi, 816 F.3d 199, 209 n.12 (2d Cir. 2016) ("Because § 20(a) of the Exchange Act imposes derivative liability on parties controlling persons who commit Exchange Act violations, scienter is also required for Plaintiffs' § 20(a) claim to succeed."). An inference of scienter sufficient to establish that a defendant acted with the intent to deceive, manipulate, or defraud "may be predicated upon 'facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 268-69 (S.D.N.Y. 2008) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007)); In re Alstom SA Sec. Litig., 406 F. Supp. 2d 433, 490 (S.D.N.Y. 2005) ("Culpable participation clearly requires 'something more than negligence.'" (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 209 n.28 (1976))). Recklessness is

conduct that is, "'at the least . . . highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" Chill v. General Electric Co., 101 F.3d 263, 269 (2d Cir. 1996) (quoting Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978)). "'An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness.'" Id. (quoting Goldman v. McMahan, Brafman, Morgan & Co., 706 F. Supp. 256, 259 (S.D.N.Y. 1989)).

"On a motion for summary judgment . . . the issue is whether the evidence, taken as a whole, could support a finding by a reasonable juror that defendants acted with the intent to deceive, manipulate, or defraud investors." In re Northern Telecom Ltd. Sec. Litig., 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000). "Scienter is an issue of fact that should not typically be resolved on summary judgment 'unless the plaintiff has failed to present facts that can support an inference of bad faith or an inference that defendants acted with an intent to deceive.'" Lau v. Mezei, No. 10 Civ. 4838, 2012 WL 3553092, at *6 (S.D.N.Y. Aug. 16, 2012) (quoting Wechsler v. Steinberg, 733 F.2d 1054, 1059 (2d Cir. 1984)).

9

## II. **ANALYSIS**

A. RECONSIDERATION

The Court grants Diamond and Jenkins's motion for reconsideration, but does not do so lightly. In ruling that genuine disputes of material fact existed as to the control person liability and culpable participation of Diamond and Jenkins, the Court credited Plaintiffs' arguments that the CEO Defendants each participated in the day-to-day management of Barclays, and therefore had access to information contradicting the misrepresentations at issue, but did nothing about it, thereby raising material disputes about the highly fact-intensive issue of the CEO Defendants' scienter. But, as discussed in further detail below, Plaintiffs have failed to submit concrete admissible evidence substantiating their arguments that a genuine dispute of material fact exists with respect to the culpable participation of Diamond and Jenkins. In fact, Plaintiffs have submitted no concrete evidence demonstrating the culpable participation of the CEO Defendants. Diamond and Jenkins have therefore made a "showing of exceptional circumstances, whereby factual matters that were put before the Court on the underlying motion were misconstrued." See In re SAIC, Inc. Sec. Litig., No. 12 Civ. 1353, 2014 WL 407050, at *5 (S.D.N.Y. Jan. 30, 2014) (internal quotation marks and citations omitted). The

CEO Defendants' motion for reconsideration is therefore granted, and the Section 20(a) claims against Diamond and Jenkins are dismissed.

B. SUMMARY JUDGMENT

Plaintiffs, in their letter motions opposing summary judgment (see Dkt. Nos. 109 & 123), argue that genuine disputes of material fact prohibit summary judgment on the Section 20(a) claims against Diamond and Jenkins. In particular, Plaintiffs argue that as a result of their positions as CEOs of Barclays during the Class Period and signatories of Barclays' SEC Filings, Diamond and Jenkins had the power to direct the management and policies of Defendant William White, who oversaw LX and is liable for violations of the securities laws. (See Dkt. No. 123 at 7.) Plaintiffs also cite, but did not submit to the Court, deposition testimony of Jenkins that purportedly demonstrates that, as CEOs during the Class Period, Diamond and Jenkins both "exerted ultimate authority over every business segment within Barclays, including LX." (See id. at 8.)

Plaintiffs argue that culpable participation is an issue of intent not appropriately considered on a summary judgment motion. (See id. at 2-3.) Plaintiffs submit that Jenkins's deposition testimony establishes the CEO Defendants' "participation in management and access to information

11

contradicting the misrepresentations at issue," which suffices to raise an inference of their culpable participation. (Id. at 4.)

In response to the Court's direction to Plaintiffs to submit concrete evidence substantiating their claims, Plaintiffs submitted to this Court only four documents -- none of which has any bearing on whether disputed issues of material fact prevent summary judgment on the Section 20(a) claims against Diamond and Jenkins.

Plaintiffs' first submission is an email chain that purportedly demonstrates that White's department prepared a document on high frequency trading ("HFT") for Jenkins during the Class Period. (Id. at 6.)

The CEO Defendants, however, correctly point out that Jenkins did not contribute to this email chain, nor is there any evidence in the proffered email that Jenkins did in fact receive the "HFT primer" under discussion in the email. In fact, Jenkins testified that he did not recall receiving the primer referenced in the email chain, nor did he recall "speaking about high frequency trading or LX at the industry conference for which the primer was prepared." (See Dkt. No. 124 at 4 n.2.)

In addition to this email, Plaintiffs submit two consent decrees: one between Barclays Capital Inc. and the Securities

12

and Exchange Commission ("SEC"), and one between Barclays and the Office of the Attorney General of the State of New York. Finally, Plaintiffs submit Defendants' Answers and Objections to Plaintiffs' Requests for Admission dated April 6, 2016.

But, as the CEO Defendants point out, Plaintiffs fail to explain how these consent decrees -- which Plaintiffs do not argue were signed by, or even mention, Diamond or Jenkins -- demonstrate the culpable participation of the CEO Defendants. Indeed, even Plaintiffs' own arguments evidence the fact that these consent decrees demonstrate only "conduct which Barclays admitted to," not misconduct admitted by Diamond or Jenkins.

While it is true that applying the control person standard "necessarily involves an individualized, fact-sensitive analysis," Alstom, 406 F. Supp. 2d at 487, a "defendant still can prevail on a control person issue by pointing out that there is an absence of evidence to permit a reasonable factfinder to conclude that the defendant was a culpable participant in the alleged fraud." Alexander v. Evans, No. 88 Civ. 5309, 1993 WL 427409, at *13 (S.D.N.Y. Oct. 15, 1993) (citing Celotex, 477 U.S. at 325).

Here, Plaintiffs fail to point to any evidence, beyond mere speculation, that demonstrates that Diamond and Jenkins culpably participated in the alleged fraud. See CL-Alexanders

13

Laing & Cruickshank v. Goldfeld, 739 F. Supp. 158, 163 (S.D.N.Y. 1990) ("Nothing in the record suggests that those defendants engaged in willful or knowing conduct to defraud plaintiff.").

Plaintiffs urge that Diamond and Jenkins's positions as CEOs during the Class Period afforded them the opportunity to participate in the management of the Company and access information contradicting the misrepresentations at issue in this case. But Plaintiffs submit no particularized evidence raising an inference of Diamond or Jenkins's recklessness: that is, Plaintiffs offer no concrete admissible evidence to suggest that Diamond or Jenkins knew or should have known about the alleged fraud.

At best, the deposition testimony of Jenkins demonstrates questions of material fact as to control, since the testimony speaks to the CEOs' involvement in the day-to-day management of Barclays and their purported "ultimate authority" over every business segment within the Company. But this evidence potentially relating to control does not connect Diamond or Jenkins to any of the alleged misstatements, let alone raise a reasonable inference of culpable participation by Diamond or Jenkins or an intent to defraud. Diamond and Jenkins's responsibility for public messages issued both internally and externally to Barclays,

without a more tangible connection to the misstatements alleged in the Amended Complaint, does not demonstrate their culpable participation regarding those specific misrepresentations.

"The courts in this and other circuits refuse to find scienter where the plaintiff has failed to demonstrate wilfulness or recklessness." Phillips v. Kidder, Peabody & Co., 933 F. Supp. 303, 320 (S.D.N.Y. 1996), aff'd, 108 F.3d 1370 (2d Cir. 1997); see In re Crazy Eddie Sec. Litig., 817 F. Supp. 306, 316 (E.D.N.Y. 1993) ("[E]ven if plaintiffs could explain how the Underwriters might have discovered the fraud, plaintiffs fail to raise a genuine issue as to whether the Underwriters deliberately shut their eyes to the fraud."); see also Telecom, 116 F. Supp. 2d at 463-64 (granting summary judgment motion where plaintiffs failed to prove scienter, including by failing to establish that defendants had a motive to commit fraud).

While disputed issues of material fact may exist with respect to whether or not Diamond and Jenkins exercised control over a primary violator, on reconsideration, the Court finds no record evidence of Diamond or Jenkins's culpable participation in the alleged fraud. Gordon v. Burr, 506 F.2d 1080, 1086 (2d Cir. 1974) ("We fail to find in the record support for a finding that P.A.W. had knowledge of the

15

fraudulent representations or in any meaningful sense culpably participated in them.").

Accordingly, the Section 20(a) claims against Diamond and Jenkins are dismissed.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. Nos. 122 & 124) of Defendants Robert Diamond ("Diamond") and Antony Jenkins ("Jenkins") for reconsideration of the Court's July 17, 2018 Order (Dkt. No. 120) is **GRANTED,** and it is further

**ORDERED** that the motion of Diamond and Jenkins for summary judgment (Dkt. No. 111) is **GRANTED** on reconsideration.

**SO ORDERED.**

Dated:   New York, New York
         21 September 2018

                                    Victor Marrero
                                       U.S.D.J.