## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

BARBARA STROUGO, Individually and on
Behalf of All Others Similarly Situated,

                  Plaintiff(s),

       v.

BARCLAYS PLC, BARCLAYS CAPITAL
INC., ROBERT DIAMOND, ANTONY
JENKINS, CHRISTOPHER LUCAS, TUSHAR
MORZARIA, and WILLIAM WHITE,

                  Defendants.

-------------------------------------------------------- X

Case No. 1:14-cv-05797-VM-DCF

ECF CASE

**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

**POMERANTZ LLP**
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, Floor 20
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: taweinrib@pomlaw.com
*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY................................................................................. 4

III.  The Settlement .................................................................................................... 8

IV.   THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED ................... 9

      A.    The Settlement is Entitled to a Presumption of Fairness. ..................... 10

V.    The Settlement is Substantively Fair ................................................................ 12

      A.    The Litigation Will be Complex, Expensive, and Long ....................... 13

      B.    The Class Reaction Supports Final Approval ....................................... 14

      C.    The Advanced Stage of the Proceedings Supports Approval of the Settlement ... 16

      D.    There Are Substantial Risks of Establishing Liability and Damages .................. 16

      E.    The Risks of Maintaining Class Action Status Through Trial.............................. 18

      F.    The Ability of Defendants to Withstand a Greater Judgment.............................. 19

      G.    The Settlement Amount Is Within the Range of Reasonableness in Light of
            the Best Possible Recovery and All the Attendant Risks of Litigation ............... 19

VI.   THE PLAN OF ALLOCATION SHOULD BE APPROVED ........................................ 21

VII.  NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS........ 22

VIII. CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Basic v. Levinson*,
  485 U.S. 224 (1988)...........................................................................................2, 7, 14, 19

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)...............................................................................................................9

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-CV-10211 LTS HP, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) .............................17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................................................ *passim*

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
  954 F. Supp. 2d 276 (S.D.N.Y. 2013)...................................................................................1

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)...................................................................................................10

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)......................................................................................................1, 17

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)..............................................................................................................22

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ....................10, 21

*George v. China Auto. Sys., Inc.*,
  No. 11-cv-7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) .....................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014).................................................................................................13, 14, 18

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ..............................................................................................18

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
  No. 11-cv-4209 (KBF), 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ..................................18

*In re Advanced Battery Techs. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014)...........................................................................................23

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............14, 15, 16, 19

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259, (S.D.N.Y. Nov. 9, 2012).........................................................14, 15, 19

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)......................................................................................12

*In re Crazy Eddie Sec. Litig.*,
   824 F. Supp. 320 (E.D.N.Y. 1993) .....................................................................................2, 21

*In re Flag Telecom Holdings*,
   2010 WL 4537550 (S.D.N.Y. Nov 8, 2010)............................................................................19

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ......................................................................16, 17

*In re IMAX Secs. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................................21

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009).....................................................................................20

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454, (9th Cir. 2000) .................................................................................................20

*In re Paine Webber Ltd. P'ships Litig*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................................10

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017)........................................................................................................2

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) .................................................................................1, 20

*In re Scientific Atl., Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) ...................................................................................18

*In re Silvercorp Metals, Inc. Sec. Litig.*,
   No. 12-cv-9456 (JSR) (S.D.N.Y. Nov. 12, 2014), ECF No. 63 .................................................1

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000).......................................................................................................9

*Lyons v. Marrud, Inc.*,
    No. 66-cv-415, 1972 WL 327 (S.D.N.Y. June 6, 1972) ..........................................11

*Menkes v. Stolt-Nielsen S.A.*,
    No. 3:03CV00409 (DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011) .............................15

*Parker v. Time Warner Entm't Co.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*, 378 F.
    App'x 63 (2d Cir. 2010) ..........................................................................16

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009) .............................................................17

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015) .............................................................5

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................10, 12, 13

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ......................................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .............................................................9, 14, 16, 20

**Statutes**

15 U.S.C. § 77 ......................................................................................22

15 U.S.C. § 78 ......................................................................................13

15 U.S.C. § 78j(b) ...................................................................................5

15 U.S.C. § 78t(a) ...................................................................................5

New York Martin Act ..................................................................................5

**Rules**

Fed. R. Civ. P. 23 ...........................................................................1, 6, 22, 23

Federal Rule of Evidence 301 ........................................................................7

**Other Authorities**

17 C.F.R. § 240.10b-5 ................................................................................5

Cornerstone Research, *Securities Class Action Settlements: 2017 Review and
    Analysis* ........................................................................................1

William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 *Newberg on Class Actions* § 13.44 (5th ed. 2014) .................................................................................................9

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Class Representatives Mohit Sahni and Joseph Waggoner (together, "Plaintiffs"), on behalf of themselves and the Settlement Class, present for the Court's final approval a $27,000,000 cash settlement resolving all claims in this Action against Defendants, as set forth in the Stipulation of Settlement, dated January 28, 2019 ("Stipulation") (Docket ("Dkt.") No. 138).[1]

The $27,000,000 Settlement is an excellent result for the Class and is substantively fair under the factors articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Plaintiffs estimate that the proposed Settlement provides the Settlement Class with approximately 28.2% of likely recoverable damages[2], which is well above median settlements for similar securities class actions.[3]  *See* Order, *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456 (JSR) (S.D.N.Y. Nov. 12, 2014), ECF No. 63 (granting preliminary approval of settlement that was just over 10% of the likely recoverable damages); *see also* Memorandum of Law in Support of Preliminary Approval of settlement (Oct. 23, 2014), ECF No. 60; *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013) (granting final approval of settlement that was "10% of the plaintiff's best-case damages model"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings set forth in the Stipulation.

[2] This estimate is based on a calculation of damages performed by Plaintiffs' damages consultant.  By not opposing this motion, Defendants are not expressing agreement with Plaintiffs' damage calculation.

[3] *See* Cornerstone Research, *Securities Class Action Settlements: 2017 Review and Analysis* at 8, 10 (noting that in 2017 the median settlement as a percentage of "simplified tiered damages" for a Rule 10b-5 claim was 5.8% while between 2008 through 2017 the average settlement as a percentage of "simplified tiered damages" for cases with a 1933 Act claim with a named underwriter defendant was 12.8%). It should be noted that these studies tend to focus on the size of the settlement relative to transactions losses, not recoverable damages, and probably understates the recovery rate. See *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005).

studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 323-24 (E.D.N.Y. 1993) (approving settlement that was 10% of estimated maximum recovery). The Settlement's merit is further demonstrated by the fact that, to date, no potential Settlement Class Members have objected to the Settlement.

While securing an excellent result for the Settlement Class, Plaintiffs also secured important precedent favorable to class members in securities class actions. Building on its decision in *In re Petrobras Sec. Litig.,* 862 F.3d 250, 267-69 (2d Cir. 2017), another case in which Pomerantz is lead counsel, the Second Circuit refused to adopt a requirement, urged by Defendants, that all securities class action plaintiffs seeking class certification demonstrate market efficiency using direct evidence (*i.e.*, via an event study). Indeed, the Second Circuit ruled that it might be possible to certify a class without *any* event study, concluding that "direct evidence of price impact [*i.e.*, an event study] . . . is not always necessary to establish market efficiency and invoke the *Basic* presumption" of reliance. *Waggoner v. Barclays PLC*, 875 F.3d 79, 96-97 (2d Cir. 2017). Importantly, the Second Circuit also held that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production. *Id*. at 101. This favorable ruling by the Second Circuit will form the bedrock of class action jurisprudence for decades to come.

The Settlement is entitled to a presumption of fairness because it is the result of arm's-length negotiations between highly experienced counsel, which included a full day mediation session in September 2015 before the Hon. John S. Martin acting as mediator under the auspices of Federal Arbitration, Inc. ("FedArb") and periodic subsequent correspondence between the parties spanning the last three years.

The Settlement followed four and a half years during which Counsel engaged in vigorous litigation, which included: (a) conducting a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, ADS-price movements, earnings conference calls, and analyst presentations; (b) carefully drafting a detailed Amended Complaint; (c) consulting with a damages expert to evaluate recoverable losses; (d) consulting with an investigator; (e) thoroughly researching the securities laws as well as the intricacies of dark pool trading; (f) opposing and prevailing in part against Defendants' motion to dismiss; (g) successfully moving for class certification, which included expert depositions and defending Plaintiff depositions; (h) opposing Defendants' petition for interlocutory appellate review and obtaining a precedent-setting decision by the Second Circuit, which held *inter alia* that plaintiffs need not always proffer direct evidence of market efficiency (*e.g.*, an event study) to demonstrate market efficiency; (i) successfully opposing Defendants' petition for a writ of certiorari related to the Second Circuit's decision; (j) engaging in comprehensive discovery, which included 19 fact and expert depositions as well as reviewing and analyzing hundreds of thousands of pages of documents; (k) successfully opposing Defendants Barclays and White's requests to file summary judgment motions; (l) engaging in comprehensive trial preparations; (m) participating in a full day mediation session; (n) successfully negotiating a $27 million settlement; and (o) finalizing the terms of the Stipulation with Defendants.

Plaintiffs respectfully request that the Court grant final approval of the Settlement, finally certify the Settlement Class, approve the Plan of Allocation, and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

## II.    PROCEDURAL HISTORY

This Action was first filed on July 28, 2014 in the Southern District of New York. By order dated October 2, 2014, the Court appointed Mohit Sahni and Joseph Waggoner as Lead Plaintiffs and Pomerantz LLP as Lead Counsel. (Docket No. 11). A Consolidated Amended Complaint For Violations Of The Federal Securities Laws ("Complaint") was then filed on December 15, 2014 (Docket No. 20), asserting claims against Defendants on behalf of Barclays investors during the Class Period. During that time frame, Barclays marketed and operated a "dark pool," known as Liquidity Cross or LX, a private trading venue on which participants can trade securities without publicly displaying bids or offers.

The Complaint in this Action alleges that, during the Class Period, Defendants issued misstatements concerning the operation of LX. Specifically, the Complaint alleges that Defendants misled investors by touting LX as a safe trading venue "built on transparency," with "built in safeguards to manage toxicity [of aggressive traders]" who could victimize other dark pool investors by trading ahead of anticipated purchase and sell orders, thereby rapidly capitalizing on proprietary information regarding trading patterns.  The Complaint alleges that Barclays also touted its Liquidity Profiling tool, which Defendant White (who managed the business unit that operated LX) described, as "a sophisticated surveillance framework that protects clients from predatory trading activity in LX." The Complaint further alleges that Barclays failed to disclose that it did not in fact effectively protect LX clients from predatory trading with Liquidity Profiling partly because Barclays applied manual overrides to move "aggressive" clients to more "passive" categories, failed to police LX to prevent/punish toxic trading, intentionally altered marketing materials to omit reference to the largest predatory high frequency trader in LX, preferentially routed dark orders to LX where those orders rested for two seconds seeking a "fill" vulnerable to toxic traders, and did not include the NYSE and EDGX

direct feeds to construct the national best bid and best offer ("NBBO") used to update the prices of orders resting in LX.

The Complaint alleges that investors learned the truth on June 25, 2014, when the New York State Office of the Attorney General ("NYAG") commenced a lawsuit against Barclays under the New York Martin Act, alleging that Barclays made misrepresentations regarding the operation of LX. The Complaint alleges that after the announcement of the NYAG's action, Barclays' ADS fell 7.38% on June 26, 2014.

The Complaint charged that Defendants conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5). From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability or damages.

Defendants moved to dismiss the Complaint, and the motion was fully briefed as of March 2, 2015. On April 24, 2015, Judge Scheindlin granted in part and denied in part Defendants' Motion to Dismiss. Judge Scheindlin denied the motion to dismiss as to alleged misstatements concerning LX, finding that they could be considered qualitatively material because they implicated the integrity of the company as a whole. *See Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343-53 (S.D.N.Y. 2015). Judge Scheindlin granted Defendants' motion as to alleged misstatements regarding Barclays' general business practices and risk controls, as well as statements concerning a report drafted by Sir Anthony Salz addressing Barclays' values and culture, deeming them inactionable "puffery." *Id.* Judge Scheindlin also dismissed claims against Defendants Chris Lucas and Tushar Morzaria. *Id.*

On May 27, 2015, at the direction of the Court, the Class Representatives filed a Consolidated Second Amended Complaint that added a description of the Class Representatives' investigation to verify the allegations in the complaint.

On July 17, 2015, the Class Representatives moved the Court to certify the litigation as a class action, appoint them as class representatives, and their counsel, Pomerantz LLP ("Pomerantz") as class counsel. Defendants opposed this motion. The Class Representatives' class certification motion was fully briefed as of October 26, 2015 and the Court held an evidentiary hearing and oral argument on November 5, 2015. On February 2, 2016, the Court issued an order granting the Class Representatives' motion, certifying the litigation as a class action, appointing the Class Representatives, and appointing Pomerantz as class counsel.

On February 16, 2016, Defendants filed a petition with the U.S. Court of Appeals for the Second Circuit pursuant to Federal Rule of Civil Procedure 23(f) seeking review of the February 2, 2016 order granting the Class Representatives' motion for class certification. The petition was fully briefed as of March 7, 2016.

The parties completed fact discovery in March 2016 and expert discovery in July 2016.

On June 15, 2016, the Second Circuit granted Defendants' petition for leave to appeal. On September 7, 2016, the Second Circuit granted Defendants' July 11, 2016 motion seeking a stay of the District Court proceedings pending resolution of Defendants' appeal. Defendants' Rule 23(f) appeal was fully briefed as of September 12, 2016, and the Second Circuit held oral argument on November 15, 2016. On August 3, 2017, the Second Circuit sought additional briefing from the parties regarding the impact of the Court's decision in *In re Petrobras Securities*, No. 16-1914, which the parties provided on August 24, 2017.

On November 6, 2017, the Second Circuit affirmed the District Court's February 2, 2016 order certifying the Litigation as a class action. The Second Circuit's decision held that plaintiffs need not always provide direct evidence of market efficiency using event studies to invoke the fraud on the market presumption of reliance set forth in *Basic v. Levinson*, 485 U.S. 224 (1988). The Second Circuit further held that defendants seeking to rebut the *Basic* presumption must do so by a preponderance of the evidence, not the lower standard of to Federal Rule of Evidence 301 advanced by Defendants. On November 20, 2017, Defendants submitted to the Second Circuit a petition for panel rehearing or rehearing *en banc*, which was denied by the Second Circuit on January 5, 2018.

On February 26, 2018, Defendants submitted a petition for a writ of certiorari with the U.S. Supreme Court. The petition was fully briefed as of April 10, 2018. The Court denied Defendants' petition on April 30, 2018, and the case was returned to the District Court for further proceedings.

On May 9, 2018, pursuant to the Court's individual practices, Defendants submitted letters requesting a pre-motion conference regarding their anticipated motions for summary judgment. The Class Representatives opposed Defendants' requests by letters dated May 11, 2018. On July 17, 2018, the Court issued an order denying Defendants' request for a pre-trial conference, and, on July 31, 2018, ordered the parties to prepare for trial, which the order set to commence on March 18, 2019. On August 2, 2018, former Defendants Robert Diamond and Antony Jenkins made a motion for reconsideration of the Court's summary judgment order. After a conference on August 8, 2018 and further letters from the parties, the Court granted the motion and granted summary judgment as to the claims against former Defendants Diamond and Jenkins on September 21, 2018.

III.    **THE SETTLEMENT**

In September 2015, the Settling Parties participated in a mediation with the assistance of the Hon. John S. Martin.  The Settling Parties did not reach an agreement to settle the litigation at that time but continued to confer periodically to discuss potential settlement of the Litigation. In October, November, and December 2018, the Settling Parties resumed settlement discussions and conferred periodically in an effort to resolve the Litigation.  After extended negotiations, the Settling Parties executed a Memorandum of Understanding setting forth their agreement in principle to settle the Litigation ("MOU"), a mere 13 weeks before trial was scheduled to commence.  Subsequently, the Settling Parties continued negotiations resulting in the terms and conditions set forth in the Stipulation.

On January 28, 2019, Plaintiffs filed a motion for preliminary approval of settlement ("Preliminary Approval Motion") (Dkt. Nos. 136-38), and accompanying documents.  The Court thereafter issued an Order Preliminarily Approving Settlement and Providing For Notice on February 4, 2019 (Dkt. No. 139) ("Preliminary Approval Order").  The Court scheduled the Settlement Hearing for final approval of the Settlement, attorney's fees and expenses, Plaintiffs' compensatory awards, and to hear any objections by Settlement Class Members, for May 31, 2019 at 10:00 a.m.  *Id.*  Defendants have paid $27,000,000 into escrow accounts for the benefit of the Class, $500,000 of which is in an escrow account earmarked for Notice and Administration costs.  The Claims Administrator, JND Legal Administration ("JND") mailed the Notice of Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Claim Form") (collectively, the "Notice and Claim Form") to 199,353 Notice Packets to potential Class Members, brokers and nominee holders.  *See* Weinrib Decl., Ex. 1, Declaration of Luiggy Segura Regarding: (A) Mailing Of The Notice Of Proposed Settlement Of Class Action And Proof Of Claim And Release Form; (B) Publication Of The Summary Notice Of Pendency

And Proposed Settlement Of Class Action And Final Approval Hearing; And (C) Report On Requests For Exclusion, dated April 5, 2019 ("Segura Decl."), ¶¶ 2-10.  The Summary Notice was published on March 4, 2019. *Id.* at ¶ 11. As of April 5, 2019, not a single Settlement Class Member has transmitted an objection to the Settlement to the claims administrator or Counsel. *Id.* at ¶ 13.  The deadline to file an objection is May 10, 2019.  Preliminary Approval Order at 6-7, ¶13.  To date, ten requests for exclusion have been received. Segura Decl., at ¶ 12.  The deadline to submit a request for exclusion is May 10, 2019.  Preliminary Approval Order at 5, ¶ 11.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  Courts consider "both the settlement's terms and the negotiating process leading to settlement." *Id*.  The Second Circuit has repeatedly noted the "strong judicial policy in favor of settlements, particularly in the class action context." *Id*.[4]  Moreover, the U.S. Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).  This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See* William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 Newberg on Class Actions § 13.44 (5th ed. 2014).  The Settlement here is fair, adequate, and reasonable and not a product of collusion.

---

[4] All internal citations and quotations are omitted herein, unless stated otherwise.

A.      **The Settlement is Entitled to a Presumption of Fairness.**

"So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."  *In re Paine Webber Ltd. P'ships Litig,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Fleisher v. Phoenix Life Ins. Co*., No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574, *17 (S.D.N.Y. Sept. 9, 2015) (courts should give "proper deference to the private consensual decision of the parties" and bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation"); *Thompson v. Metro. Life Ins. Co*., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length.").

The Settlement was reached through arm's-length negotiation, which included an unsuccessful all-day mediation before a respected and experienced mediator held in 2015. Weinrib Decl., ¶¶ 6, 29. The parties engaged in additional unsuccessful settlement discussions in 2017. *Id*. Following the Second Circuit's affirmance of this Court's class certification decision and with trial preparation underway for a March 2019 trial, the parties resumed discussions in late 2018 and reached an agreement in principle to settle this Action. *Id.* The arm's length negotiations, though collegial, were adversarial and produced a result that the settling parties have deemed to be in their respective best interests.  The arm's-length nature of the settlement negotiations and the initial involvement of an experienced mediator supports the conclusion that the Settlement is fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In negotiating the Settlement, Plaintiffs had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Partner Tamar A. Weinrib) who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* Pomerantz Resume, Weinrib Decl., Ex. 2 (Ex. A); *see also Lyons v. Marrud, Inc.*, No. 66-cv-415, 1972 WL 327, *2 (S.D.N.Y. June 6, 1972), ("[E]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case."). The efforts of Class Counsel secured a Settlement that provides substantial benefits to the Settlement Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

The parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to their agreement to settle. Plaintiffs and their counsel (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, ADS-price movements, earnings conference calls, and analyst presentations; (b) carefully drafted a detailed Amended Complaint; (c) consulted with a damages expert to evaluate recoverable losses; (d) consulted with an investigator; (e) thoroughly researched the securities laws as well as the intricacies of dark pool trading; (f) opposed and prevailed in part against Defendants' motion to dismiss; (g) successfully moved for class certification, which included expert depositions and defending Plaintiff depositions; (h) opposed Defendants' petition for interlocutory appellate review and obtaining a precedent-setting decision by the Second Circuit, which held *inter alia* that plaintiffs need not always proffer direct evidence of market efficiency (*e.g.*, an event study)

to demonstrate market efficiency; (i) successfully opposed Defendants' petition for a writ of certiorari related to the Second Circuit's decision; (j) engaged in comprehensive discovery, which included 19 fact and expert depositions as well as reviewing and analyzing hundreds of thousands of pages of documents; (k) successfully opposed Defendants Barclays and White's requests to file summary judgment motions; (l) engaged in comprehensive trial preparations; (m) participated in a full day mediation session and subsequent settlement discussions spanning three years. *See* Weinrib Decl. ¶ 67.

The Settlement does not provide preferential treatment to Plaintiffs or any other Settlement Class Members. The proposed Plan of Allocation, which is set forth on page 12 of the Notice, and was developed by Plaintiffs' damages expert in consultation with Counsel, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. Weinrib Decl. ¶¶ 50-62. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.* Similar plans have repeatedly been approved by courts in this District. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

For all these reasons, the Settlement, which resulted from a thorough arm's-length process, enjoys a presumption of fairness. *See Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length.").

## V.    THE SETTLEMENT IS SUBSTANTIVELY FAIR

To evaluate the substantive fairness of a settlement, courts in the Second Circuit consider the nine *Grinnell* factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances.  *Thompson v. Metro. Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003).  On balance, the *Grinnell* factors support approval of the Settlement.

### A.      The Litigation Will be Complex, Expensive, and Long

The proposed Settlement provides the Settlement Class with substantial and certain relief, without the delay and expense of motion practice, discovery, class certification, trial, and post-trial proceedings.  Due to the inherent complexity of securities litigation and the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. §78u-4(f)(7) (PSLRA), amendments to the Exchange Act, as well as supervening case law developments such as the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ("*Halliburton II*"), prosecution of securities-class-action litigation is inherently complex and lengthy.

Indeed, the complexity of this case is evidenced by the intricate issues litigated during Defendants' appeal before the Second Circuit of the district court's class certification decision. The appeal covered questions concerning whether plaintiffs must proffer direct evidence of market efficiency to invoke *Basic's* fraud on the market presumption of reliance and what standard defendants must meet to rebut that presumption once invoked.  In a significant decision which will form the bedrock of class action jurisprudence for years to come, the Second Circuit affirmed the district court's certification of the class and held that plaintiffs need not always

demonstrate market efficiency using direct evidence, *i.e.,* an event study.  The Court further held that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Moreover, this Action had been scheduled for trial to begin March 18, 2019, which would have been expensive, risky and undoubtedly followed by years of appeals even if Plaintiffs secured a judgment.  The jury would have had to determine: (i) whether any misrepresentations/omissions were material; (ii) whether Defendants acted with scienter; (iii) whether *Basic's*  fraud-on-the-market reliance presumption applies, and whether Defendants' rebuttal price-impact evidence under *Halliburton II* rebutted the *Basic* presumption; and (iv)  the amount of artificial inflation in Barclays' American Depository Shares and how much of the price decline resulted from the alleged curative disclosure.  In addition to resolving numerous complex securities law issues, the jury would have had to navigate the intricacies of dark pool trading, and navigate battles of the experts regarding market efficiency, loss causation, and damages. Not only would recovery be very uncertain, considering the probability of appeals, it would inevitably take years to collect.

### B.    The Class Reaction Supports Final Approval

The reaction of the Settlement Class to the Settlement is a significant factor for the court to weigh when considering its adequacy. *City of Providence v. Aéropostale, Inc*., No. 11 CIV. 7132 CM GWG, 2014 U.S. Dist. LEXIS 64517, *15-16 (S.D.N.Y. May 9, 2014); *In re Bear Stearns Cos.,* 909 F. Supp. 2d 259, 266 (S.D.N.Y. Nov. 9, 2012). When there are no objectors, as is the case here, the court can view this as indicative of the adequacy of the settlement. *Wal-Mart Stores*, 396 F.3d at 118; *In re AOL Time Warner, Inc*., No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (finding that the "small number of objectors . . . strongly favor the Settlement").

The Settlement Class is overwhelmingly in favor of the Settlement. Summary Notice was published on March 4, 2019, and 199,353 Notice Packets have been mailed to potential Class Members, brokers and nominee holders. Segura Decl., Ex. 1, ¶¶ 2-10. The Notice contains a description of the Action, the Settlement, and information about Settlement Class Members' right to participate in the Settlement by submitting a Claim Form; to object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application; or to request exclusion from the Settlement Class. Segura Decl., Ex. A. As of April 12, 2019, not a single Settlement Class Member has objected to the Settlement. Weinrib Decl., ¶ 48. In December 2018, JND caused publication of the Summary Notice of Pendency of Class Action alerting potential Class Members to the certification of this Action as a class action. Ten potential Class Members requested exclusion from the Class. While certain of those requests for exclusion post-date Plaintiffs' filing of the preliminary approval motion, they all pre-date the publication of Summary Notice of Pendency And Proposed Settlement Of Class Action And Final Approval Hearing. Moreover, not a single request for exclusion mentions the Settlement.

The Settlement Class' favorable reaction supports approving the Settlement. *See Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (finding that the "small number of objectors and low percentage of opt-outs strongly favor the Settlement"); *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409 (DJS), 2011 WL 13234815, at *3 (D. Conn. Jan. 25, 2011) (Finding that "the complete absence of opposition or exclusion requests favors approval of the proposed settlement.").

### C.     The Advanced Stage of the Proceedings Supports Approval of the Settlement

The advanced stage of the proceedings in this action also supports approval of the Settlement.  "This factor relates to whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement." *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010). Extensive discovery ensures the parties had access to sufficient material to evaluate their cases and to assess the settlement given strengths and weaknesses. *Id.* Here, the proceedings were sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and weaknesses of the Class's claims.

Fact and expert discovery were completed long before the parties agreed to settle. Defendants produced hundreds of thousands of pages of documents. Weinrib Decl. ¶ 67. The Parties also obtained testimony from witnesses through 19 depositions of Plaintiffs, Defendants, third parties, and experts. *Id*. ¶ 67. Accordingly, the stage of the proceedings and completion of discovery weigh strongly in favor of approving the Settlement. Indeed, the parties were less than two months from trial when Plaintiffs filed the preliminary approval motion.

### D.     There Are Substantial Risks of Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "[i]n Assessing the Settlement the Court should balance the benefits afforded to members of the Class and the immediacy and

certainty of a substantial recovery for them against the continuing risks of litigation." *Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211 LTS HP, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (citing *Maley v. Del Global Tech. Corp.,* 186 F.Supp.2d 358, 364 (S.D.N.Y.2002)). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

Substantial risks exist in prosecuting this Action through trial. Defendants have argued, and would have continued to argue that Plaintiffs cannot prove: (1) that the alleged misstatements were false or misleading; (2) that the alleged misstatements are material given that "LX accounted for 0.1 % of Barclays revenue"; (3) that they are entitled to *Basic's* fraud-on-the-market presumption of reliance at trial; and (4) loss causation or damages because Defendants argue that the decline Barclays ADS price at the end of the Class Period did not result from a revelation of the fraud but rather the announcement of regulatory action.

As a result of *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-56 (2005), Plaintiffs would have had to show that it was the disclosure of the alleged securities violations that caused Plaintiffs to incur a loss, as opposed to other unrelated matters. Establishing loss-causation is a "complicated and uncertain process, typically involving conflicting expert opinion[s]." *Global Crossing*, 225 F.R.D. at 459 (S.D.N.Y. 2004). Although Plaintiffs are confident they would successfully establish loss-causation if the Action continued, litigation is inherently risky and lacking in any guarantees. Making a showing that Plaintiffs' losses attributable to the corrective disclosure can be disaggregated from non-fraud related stock declines is dependent on complicated facts and expert opinion. *See, e.g., Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock

drop following press release for failure to "explain why the disclosure on page 8 – as opposed to all other information in the extended 12-page release – caused the price decline"); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline). Even if Plaintiffs prevailed at trial, a jury verdict could be reversed on appeal due to problems with loss causation. *See e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation). Accordingly, the risks of establishing loss causation and damages favor the Court's approval of the Settlement.

### E.    The Risks of Maintaining Class Action Status Through Trial

While certification of securities class action remains the norm, it is by no means automatic. *See, e.g., IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11-cv-4209 (KBF), 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) (denying motion for certification of class of U.S. purchasers of large foreign bank's Global Registered Shares); *George v. China Auto. Sys., Inc.*, No. 11-cv-7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) (denying motion for certification of class of purchasers of stock of China-based U.S.-listed company). To be entitled to class certification, Plaintiffs must show that common issues predominate over individual ones. Plaintiffs can meet their burden by showing that Barclays' securities traded on an efficient market, entitling purchasers to the presumption of reliance on Defendants' materially false statements. Under *Halliburton II*, Defendants are permitted to rebut the presumption of reliance by proving the absence of price impact from the alleged misstatements, thereby defeating class certification.

Defendants had already stated an intention to argue at trial that the Second Circuit ruling affirming class certification had precluded Plaintiffs from invoking the *Affiliated Ute*

presumption of reliance and thus from pursuing an "omissions case" on a class basis. Defendants have further argued, and would have likely continued to argue, that Plaintiffs could not invoke *Basic's* fraud on the market presumption of reliance at trial because the affirmative misstatements were quantitatively immaterial.    While Plaintiffs strongly disagree with Defendants' characterization of the Second Circuit's ruling and are confident they could prove reliance on a class basis utilizing the *Basic* presumption at trial, the risk of maintaining a Class Action through trial certainly existed.

### F.    The Ability of Defendants to Withstand a Greater Judgment

Even if a judgment were a burden that Barclays could bear, "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair." *AOL Time Warner*, 2006 WL 903236, at \*12. The Court must weigh this factor "in conjunction with all of the *Grinnell* factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund." *Id.* With this in mind, the Settlement clearly represents a good compromise between the parties, and it should be finally approved.

### G.    The Settlement Amount Is Within the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings*, 2010 WL 4537550, at \*20 (S.D.N.Y. Nov 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with

respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

The Settlement provides for a recovery of $27,000,000. Following the June 25, 2014 revelation that the New York State Office of the Attorney General ("NYAG") brought a lawsuit against Barclays under New York's Martin Act, alleging that Barclays concealed information about its operation of the LX dark pool, Barclays' ADS price fell 7.38 percent on heavy volume. Assuming Plaintiffs could have recovered for the entire drop, damages were estimated at approximately $95.6 million.[5] The Settlement thus represents approximately 28.2% of the potential most likely recovery. Moreover, the damages computation assumes that 100% of eligible class members file claims. It is more likely that less than 100% will do so (despite efforts made to notify as many eligible claimants as possible, including posting the notice on the Internet).

In any event, the percentage of recovery here falls well within the range of reasonableness. *See, e.g., In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d 467, 483 n.130 (S.D.N.Y. 2009) (citing a law review article finding that "the ratio of securities class action settlements to investors' economic losses has ranged over recent years between two and three percent"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 at 715 (E.D.P.A. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

---

[5] The parties disagree regarding the estimate of damages. Indeed, this is one of the issues that would have been heavily litigated, including a battle of the experts, had the parties not agreed to settle. By not opposing this motion, Defendants are not expressing agreement with Plaintiffs' damage calculation.

454, 459 (9th Cir. 2000); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 328 (E.D.N.Y. June 11, 1993) (approving settlement that was 10% of estimated maximum recovery); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) 495 F.2d 448 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")

## VI.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate. When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims." *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (citations, brackets, and internal quotation marks omitted). Pro-rata distributions have "frequently been determined to be fair, adequate, and reasonable." *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *42 (collecting cases).

The proposed Plan of Allocation, which was developed by Counsel in consultation with a damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Weinrib Decl. ¶¶ 50-62. A recognized-loss amount will be calculated for each purchase or acquisition of Barclays ADSs during the Settlement Class Period listed on the Claim Form and for which adequate documentation is provided. *Id.* The calculation of recognized-loss amounts is based on the difference between the amount of estimated alleged artificial inflation in Barclays ADSs on the purchase date and the amount of estimated alleged artificial inflation on the sale date. *Id.* The sum of the recognized-loss amounts for all of a Claimant's purchases of Barclays ADSs during the Settlement Class Period is the Claimant's recognized claim ("Recognized Claim"), and the

Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.*

Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Barclays ADSs attributable to the conduct alleged. Moreover, the Plan of Allocation is set forth in the Notice, and to date no objections to the Plan have been received from any Settlement Class Members. *Id.* at ¶ 62. Accordingly, for all of the reasons set forth herein, the Plan of Allocation is fair and reasonable and should be granted final approval for the purpose of administering the Settlement.

## VII.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including the following: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Counsel, administrative costs, and awards to Plaintiffs; (vii) the rights of Settlement Class Members, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so; (x)

instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name, and (xi) the binding effect of a judgment on Settlement Class Members.

The Notice program was carried out by JND Legal Administration ("JND"), a third-party claims administrator nationally recognized for notice and claims administration, under the supervision of Counsel. Segura Decl., ¶1. In accordance with the Court's orders, as of April 5, 2019, JND distributed over 199,353 Notice packets to potential Settlement Class Members and their nominees. *Id.* at ¶ 10. The Summary Notice was posted over *GlobeNewswire* and published in *Investor's Business Daily* on March 4, 2019. *Id.* at ¶ 11, Ex. B. The Notice and Stipulation were also available on the Claims Administrator's website. *Id.* at ¶ 13.

This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and posted on the internet, was "the best notice … practicable under the circumstances." Rule 23(c)(2)(B); *see In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014).

## VIII.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

Dated: April 12, 2019

Respectfully submitted,

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100

Facsimile:  917-463-1044

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

***Counsel for the Class***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of April 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman