**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

BARBARA STROUGO, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff(s),

      v.

BARCLAYS PLC, BARCLAYS CAPITAL
INC., ROBERT DIAMOND, ANTONY
JENKINS, CHRISTOPHER LUCAS, TUSHAR
MORZARIA, and WILLIAM WHITE,

                Defendants.

------------------------------------------------------- X

Case No. 1:14-cv-05797-VM-DCF

ECF CASE

 

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND
<u>COMPENSATORY AWARDS FOR CLASS REPRESENTATIVES</u>**

**POMERANTZ LLP**
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, Floor 20
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: taweinrib@pomlaw.com

*Class Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<strong><u>Page(s)</u></strong>

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................... 5

    A.    Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund ........................................................................ 5

    B.    The Court Should Award a Reasonable Percentage of the Common Fund ........... 6

    C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable ................. 9

        1.    The Time and Labor Expended by Counsel ................................................ 9

        2.    The Magnitude, Complexity, and Risk of Litigation. ............................... 10

        3.    The Settling Parties Were Represented by Experienced, High-Caliber Counsel Who Approved the Settlement. ................................................... 17

        4.    The Requested Fee in relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law. ................................................... 18

        5.    Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement. ......................................................... 19

        6.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method ........................ 20

        7.    Counsel Should Be Reimbursed for $791,680.21 in Litigation Expenses, Which Is Far Below the Already-Requested $1,000,000 Limit. .............. 22

    D.    The Proposed Plaintiffs' Awards Are Reasonable. ................................................ 23

III.    CONCLUSION ............................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allapattah Servs. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006, Apr. 16, 2007) ........................................................... 23

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ........................................................................................................... 4, 19

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .............................................................................................. 12

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   No. 10 Civ. 4825 (JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ............................. 8, 10

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ................................................................................................... 12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ............................................................................................................... 6

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ................................................................................................. 12

*Blum v. Stenson*,
   465 U.S. 886 (1984) ......................................................................................................... 20, 21

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................................... 5

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ................................................................................................ 7

*Bryant v. Avado Brands, Inc.*,
   100 F. Supp. 2d 1368 (M.D. Ga. 2000) ................................................................................ 14

*Bryant v. Dupree*,
   252 F.3d 1161 (11th Cir. 2001) ............................................................................................ 14

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................................ 7

*Campos v. Goode*,
   No. 10-cv-0224 (DF), 2011 WL 9530385 (S.D.N.Y. Mar. 4, 2011) .................................. 23

*Citiline Holdings, Inc. v. iStar Fin., Inc.*,
No. 1:08-cv-03612-RJS, slip op. (S.D.N.Y. Apr. 5, 2013)............................................1, 19, 20

*City of Providence v. Aéropostale, Inc.*,
11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014),
*aff' d sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) ...................... *passim*

*Collins v. Olin Corp.*,
No. 3:03-cv-945 (CFD), 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ................................20

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).................................................................................13, 17, 21

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................19

*Eltman v. Grandma Lee's, Inc.*,
No. 82 Civ. 1912, 1986 U.S. Dist. LEXIS 24902 (E.D.N.Y. May 28, 1986)........................17

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).................................................................................. *passim*

*Halliburton v. Erica P. John Fund*,
134 S. Ct. 2398 (2014).............................................................................................15

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .....................................................................................7

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013), cert. denied, 571 U.S. 888, 134 S. Ct. 310
(2013)...................................................................................................................6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................................21

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..........................8, 26

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .......................................................................12, 14, 16

*In re Alloy, Inc. Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ...............................13

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................7, 9, 11, 15

*In re Amaranth Nat. Gas Commodities Litig.*,
  No. 07 Civ. 6377 SAS, 2012 U.S. Dist. LEXIS 82599, (S.D.N.Y. June 11,
  2012) ..................................................................................................................18, 20

*In re AOL Time Warner, Inc.*,
  No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................13, 21

*In re Apple Computer Sec. Litig.*,
  No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)...................................12

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
  No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013), *aff'd*,
  772 F.3d 125 (2d Cir. 2014)........................................................................................23

*In re Bayer AG Sec. Litig.*,
  No. 03 Civ. 1546 (WHP), 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ..............................13

*In re Beacon Assocs. Litig.*,
  No. 09 Civ. 777 (CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013).......................................8

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................................23

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. July 8, 2014)................................................................9, 22

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ..................................................................................11, 21

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)..............................................................................22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-cv-10240 CM, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)...................22

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
  No. CIV.A. 08-11064-NMG, 2012 U.S. Dist. LEXIS 174711 (D. Mass. Dec.
  10, 2012) ...............................................................................................................24, 25

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015).......................1, 18, 20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............17, 18, 24

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................18, 23

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................7, 17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)...............................................................................7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992) .......................................................................8

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000)......................................................................13

*In re IMAX Sec. Litig.*,
   No. 06 Civ. 6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) .................8

*In re Initial Public Offering Secs. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................2, 19, 21

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527 (DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)..................6

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96-cv-1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)..................22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...........16, 25

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1995) .................................................................23

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) .....................................................................22

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............................................................25

*In re Milken & Associates Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) .......................................................................15

*In re Paine Webber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..............................................................18

*In re: Petrobras Sec. Litig.*,
   312 F.R.D. 354 (S.D.N.Y. 2016) .....................................................................18

*In re Prudential Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997)........................................................................11

*In re Sadia S.A. Sec. Litig.*,
    No. 08 Civ. 9528 (SAS), 2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28,
    2011) ................................................................................................................1, 19, 20

*In re Scientific Atlanta, Inc. Sec. Litig.*,
    754 F. Supp. 2d 1339 (N.D. Ga. 2010) ...............................................................16

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
    3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012).........................15

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)......................................................................8

*In re Thirteen Appeals Arising*
*out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir.
    1995) .......................................................................................................................7

*In re Tommy Hilfiger Sec. Litig.*,
    No. 1:04-CV- 07678-SAS, slip op. (S.D.N.Y. Oct. 16, 2008) ................................8

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008)...........6, 25

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...................................................................21

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007); ..............7

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................8

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .......16, 17, 18

*In re Worldcom, Inc. Sec. Litig.*,
    388 Supp. 2d 319 (S.D.N.Y. 2005)......................................................................19

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)..............................................................12, 25

*J. I. Case Co. v. Borak*,
    377 U.S. 426 (1964)..............................................................................................19

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ................................................................................7

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
  No. 08- cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) .................................8

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973)................................................................................21

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................. *passim*

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993)......................................................................22

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)..........................................................................................20

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ..............................................................................7

*Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
  645 F. Supp. 2d 210 (S.D.N.Y. 2009)..................................................................15

*Rawlings v. PrudentiWeinribche Props.*,
  9 F.3d 513 (6th Cir. 1993) ..................................................................................7

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
  818 F.2d 278 (2d Cir. 1987)...............................................................................22

*Ret. Sys. v. Bank of Am. Corp.*,
  318 F.R.D. 19 (S.D.N.Y. 2016) ...........................................................................24

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ......................................................................12, 14

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..............................................................................23

*Savoie v. Merchants Bank*,
  166 F.3d 456, 1999 U.S. App. LEXIS 1117 (Jan 28, 1999)......................................7

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
  No. 02 CV 2133 (EBB), slip op. (D. Conn. Jan. 21, 2005) ...................................20

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8831 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)...................16

*Silverstein v. AllianceBernstein, L.P.*,
   No. 09-CV-5904 (JPO), 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) .................................8

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................................................7

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 1:05-CV-720 S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ....................................20

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ..............................................................................................7

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..............................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................................6, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................................8

**Statutes**

15 U.S.C. §78u-4 .....................................................................................................7, 23

**Other Authorities**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
   and Procedure §1803 (3d ed. 2005) .....................................................................................5

## I.     INTRODUCTION

Class Representatives Mohit Sahni and Joseph Waggoner (together, "Plaintiffs"), on behalf of themselves and the Settlement Class Members in the above captioned Action,[1] respectfully submit this memorandum in support of their motion for (i) an award of attorneys' fees of thirty percent (30%) of the Settlement Fund plus accrued interest, (ii) reimbursement of necessary and reasonable litigation expenses of $791,680.21, and (iii) compensatory awards of $35,000 to the Class Representative ($20,000 to Mohit Sahni, and $15,000 to Joseph Waggoner).

Plaintiffs in this action achieved the $27,000,000 settlement, which provides a significant cash benefit for the Settlement Class.  Counsel seeks attorneys' fees of $8,100,000.  Counsel and their professionals, have spent, in the aggregate, 7469.34 hours in the prosecution of this case against Defendants, with a lodestar of $4,776,953. *See* Pomerantz Decl., Rosen Law Decl.[2]  The fee sought in this case is well within the range regularly approved by courts in this Circuit.  *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *15-*18 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement); *Citiline Holdings, Inc. v. iStar Fin., Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013) (awarding 30% of $29 million settlement); *In re Sadia S.A. Sec. Litig.,* No. 08 Civ. 9528 (SAS), 2011 U.S. Dist. LEXIS 149107, at *12 (S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million settlement); *City of Providence v. Aéropostale, Inc.*, 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517, at *60 (S.D.N.Y. May 9, 2014), *aff' d sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015)

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation") filed with the Court on January 28, 2019 (Docket ("Dkt.") No. 138).

[2] "Pomerantz Decl." refers to the Declaration of Tamar A. Weinrib on Behalf of Pomerantz LLP in Support of Application for an Award of Attorneys' Fees and Expenses, filed as Exhibit 2 to the Weinrib Decl.; "Rosen Law Decl." refers to the Declaration of Laurence Rosen on Behalf of The Rosen Law Firm P.A. in Support of Application for an Award of Attorneys' Fees and Expenses, filed as Exhibit 3 to the Weinrib Decl.

(awarding 33% of $15 million settlement); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of $170,084,950.00). *Moreover, the fee was negotiated and approved by the Plaintiffs, all of whom actively participated in the litigation.* The time and labor Counsel expended in litigating this Action included: (a) conducting a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, ADS-price movements, earnings conference calls, and analyst presentations; (b) carefully drafting the detailed Amended Complaint filed on December 15, 2014 (Dkt. No. 20, 43) ("Complaint"); (c) consulting with a damages expert to evaluate recoverable losses; (d) consulting with an investigator; (e) thoroughly researching the securities laws as well as the intricacies of dark pool trading; (f) opposing and prevailing against Defendants' motion to dismiss; (g) successfully moving for class certification, which included expert depositions and defending Plaintiff depositions; (h) opposing Defendants' petition for interlocutory appellate review and obtaining a precedent-setting decision by the Second Circuit, which held *inter alia* that plaintiffs need not always proffer direct evidence of market efficiency (*e.g.*, an event study) to demonstrate market efficiency and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production; (i) successfully opposing Defendants' petition for a writ of certiorari related to the Second Circuit's decision; (j) engaging in comprehensive discovery, which included fact and expert depositions as well as reviewing and analyzing hundreds of thousands of pages of documents; (k) successfully opposed Defendants Barclays and White's requests to file summary judgment motions; (l) engaging in comprehensive trial preparations;

(m) participating in a full day mediation session; (n) successfully negotiating a $27 million settlement; and (o) finalizing the terms of the Stipulation with Defendants.

JND Legal Administration ("JND"), the Claims Administrator, provided individual notice of the settlement via first-class mail to each member of the Class whose address was reasonably ascertainable and caused publication of the Summary Notice in *Investor's Business Daily* and *Globe Newswire* on March 4, 2019.  Weinrib Decl., Exhibit 1, Declaration Of Luiggy Segura Regarding: (A) Mailing Of The Notice Of Proposed Settlement Of Class Action And Proof Of Claim And Release Form; (B) Publication Of The Summary Notice Of Pendency And Proposed Settlement Of Class Action And Final Approval Hearing; And (C) Report On Requests For Exclusion ("Segura Decl."), ¶11.  The Notice amply describes the terms of the Settlement, including (a) the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process to opt in or opt out of, or object to, the Settlement; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Class Counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so.  *Id.*, Segura Decl., Exhibit A.  The deadline for objections and requests for exclusion is May 10, 2019. Thus far no objections have been received by Counsel.  Weinrib Decl., ¶ 48.  Ten potential Class Members requested exclusion from the Class.  Segura Decl., ¶ 14. While certain of those requests for exclusion post-date Plaintiffs' filing of the preliminary approval motion, they all pre-date the publication of Summary Notice of Pendency And Proposed Settlement Of Class Action And Final Approval Hearing.[3]  Moreover, not a single request for exclusion mentions the Settlement.  .  *Id.*

---

[3] At the request of Counsel and in accordance with court order, JND disseminated A Notice of Pendency of Class Action on November 30, 2018. Segura Decl., ¶ 2.

Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $791,680.21. *See* Pomerantz Decl. and Rosen Law Decl., filed as Ex. 2 and 3 to the Weinrib Decl., respectively. This amount is well below the anticipated $1,000,000 limit of litigation-expense reimbursement that Plaintiffs requested in their motion for preliminary approval of the Settlement. These expenses were both reasonable and necessary to successfully prosecute and resolve the claims against the Settling Defendants.

Plaintiffs in this Action well deserve the request for an award of $35,000 total ($20,000 to Mr. Sahni and $15,000 to Mr. Waggoner) to compensate them for their time and service to the Settlement Class, as well as to function as an incentive to serve as representatives of the class. They devoted time and effort to researching the facts of the case; each reviewed filings, reviewed hearing and deposition transcripts, produced documents, sat for depositions, conferred with Counsel about litigation and settlement strategies, and provided authorization to Counsel for the range to be sought in the settlement negotiations.

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions […].'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013). Plaintiffs' and Counsel's contributions here exemplify the value of this "essential supplement."

## II.    ARGUMENT[4]

### A.    Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The U.S. Supreme Court and this Circuit have both recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See also Goldberger*, 209 F.3d at 47; *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *30. Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g., City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *31; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and

---

[4]A description of procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Memorandum of Law in Support of Class Representatives' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds ("Final Approval Brief").

are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (*quoting J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007). Courts in this Circuit have consistently adhered to these teachings. *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008) ("'It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to "a reasonable fee – set by the court – to be taken from the fund."'").[5] The "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig*., No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004).

Plaintiffs' contributions and Class Counsel's representation in this Action embody the policies intended to encourage private advocacy as a weapon to enforce the securities laws. The requested attorneys' fees of thirty percent (30%) of the Settlement Fund, or $8,100,000, and reimbursement of $791,680.21 of litigation expenses, which were necessary and reasonable, are very much warranted.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *32; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) (affirming district court's conclusion that the percentage method "aligns the interests of class

---

[5] Citations are omitted, and emphasis is added throughout unless otherwise indicated.

counsel with those of the class"), cert. denied, 571 U.S. 888, 134 S. Ct. 310 (2013). In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49;[6] *Savoie v. Merchants Bank*, 166 F.3d 456, 460, 1999 U.S. App. LEXIS 1117 (Jan 28, 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method in securities class actions. *See In re Veeco Instruments Inc. Sec. Litig*., No. 05 MDL 01695 (CM), 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007); *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436 (S.D.N.Y. 2004).

---

[6] The use of the percentage-of-the-fund method in common fund cases has been approved by every other Court of Appeals that has addressed the issue. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. PrudentiWeinribche Props*., 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp*., 83 F.3d 241, 246 (8th Cir. 1996); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co*., 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden*, 946 F.2d at 774; *Swedish Hosp*., 1 F.3d at 1271.

The trend among district courts in this Circuit, although not uniform, has been to apply the percentage-of-the-fund rather than the lodestar method. *See, e.g., City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *32; *In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *Silverstein v. AllianceBernstein, L.P.*, No. 09-CV-5904 (JPO), 2013 WL 7122612, at *8 (S.D.N.Y. Dec. 20, 2013); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08- cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013); *Aponte v. Comprehensive Health Mgmt., Inc*., No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013) ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in this Circuit.'"); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012) ("'the percentage method continues to be the trend of district courts in th[e Second] Circuit'"); *In re Tommy Hilfiger Sec. Litig.*, No. 1:04-CV- 07678-SAS, slip op. (S.D.N.Y. Oct. 16, 2008); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (trend in this Circuit is to award attorneys' fees using the percentage method), aff'd sub nom. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96 (2d Cir. 2005); *Maley*, 186 F. Supp. 2d at 370 (trend in this Circuit is to use the percentage method); *see also In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig*., 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available").

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award attorneys' fees based on a percentage of the fund. The percentage approach not only aligns the interests of counsel and the class, *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. July 8, 2014), it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *Am. Bank Note*, 127 F. Supp. 2d at 432.

### C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable

The Second Circuit in *Goldberger* explained that whether the court uses the percentage-of the-fund method or the lodestar approach, it should consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations. *Goldberger*, 209 F.3d at 50. An analysis of these factors demonstrates that the requested fee of thirty percent (30%) of the Settlement Fund, or $8,100,000, plus accrued interest, is fair and reasonable.

### 1.    The Time and Labor Expended by Counsel

Counsel have expended a substantial amount of time and effort pursuing this litigation on behalf of the Class. Since its inception, Counsel and their professionals have devoted more than 7469.34 hours to this litigation. As discussed more fully in the Weinrib Declaration, submitted herewith, Counsel conducted a comprehensive investigation into the Class' claims; researched and prepared a detailed amended complaint; fully briefed and successfully challenged Defendants' motion to dismiss; successfully moved for certification of the Class, which included

9

expert depositions and defending Plaintiff depositions; opposed Defendants' petition for interlocutory appellate review and obtaining a precedent-setting decision by the Second Circuit, which held *inter alia* that plaintiffs need not always proffer direct evidence of market efficiency (*e.g.*, an event study) to demonstrate market efficiency; successfully opposed Defendants' petition for a writ of certiorari related to the Second Circuit's decision; engaged in comprehensive discovery, which included fact and expert depositions as well as reviewing and analyzing hundreds of thousands of pages of documents; successfully opposed Defendants Barclays and White's requests to file summary judgment motions; engaged in comprehensive trial preparations; successfully negotiated a $27 million settlement a mere 13 weeks from trial; and finalized the terms of the Stipulation with Defendants. Moreover, Counsel, with the assistance of its damages consultant, estimated damages suffered by the Class, and prepared the proposed Plan of Allocation of Settlement proceeds. The legal work on this litigation will not end with the Court's approval of the Settlement. Counsel will necessarily expend additional hours and resources to assist Class Members with their Proofs of Claim, shepherding the claims process, and responding to Class Member inquiries. *See Aponte*, 2013 WL 1364147, at *6.

At all times during the pendency of the litigation, Counsel's efforts were driven by and focused on advancing the litigation to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible. Accordingly, the time and effort devoted to this case by Counsel to obtain the $27,000,000 recovery confirms that the thirty percent fee request is reasonable.

### 2.     The Magnitude, Complexity, and Risk of Litigation.

Courts within the Second Circuit have long recognized that the risk associated with a case undertaken on a contingency basis is an important factor in determining an appropriate fee award:

> Lead Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the Action without a guarantee of compensation or even the recovery of expenses. Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began, and would have received no compensation or expenses had this case not been successful.

*City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *40. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd*., No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *41 (same); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). Here, Counsel pursued Plaintiffs' claims against Defendants in this complex litigation with no guarantee of ever being compensated for its investment of time and money that the case would require. In undertaking this responsibility, Counsel dedicated substantial attorney and professional resources to the prosecution of the litigation and paid the considerable expenses which a case such as this entails. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

It is also wrong to presume that a law firm handling complex contingent litigation always wins. Indeed, the risk of no recovery in complex cases of this type is very real. There are

numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. As the court in *Xcel* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel*, 364 F. Supp. 2d at 994. Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion.[7]

A good example of the risks and delays inherent in securities litigation, even after a jury verdict in favor of the class, is *Jaffe v. Household Int'l, Inc.*, No. 1:02-CV-05893 (N.D. Ill.). In *Household*, a securities class action case filed in 2002, plaintiffs obtained a jury verdict in their favor on May 7, 2009 after a month-long trial and seven years of costly and contentious litigation. Because of post-verdict challenges, a judgment was not entered until October 17, 2013, which was then appealed. After 13 years of litigation, and six years after a favorable jury verdict, the Seventh Circuit ruled on May 21, 2015 that the defendants were entitled to a new trial primarily on the issue of loss causation. Contingency agreements offer counsel many ways to spend a lot of time and money on a case without ever recovering anything for themselves or

---

[7] *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for J.N.O.V. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); B*erkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

for their clients. Attorneys can secure significant results but spend so much time achieving them that they do so at significant loss to themselves.

Moreover, in assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). As this case amply demonstrates, securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See In re AOL Time Warner, Inc*., No. MDL 1500, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig*., No. 03 Civ. 1597 (WHP), at *1-*2, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in securities action presented significant hurdles to proving liability). While Plaintiffs believe that their claims would be borne out by the evidence, they also recognize that they face hurdles to proving liability. Defendants have articulated defenses to Plaintiffs' allegations that the Court and/or the jury may accept at trial.

It is widely recognized that shareholder actions are notoriously complex and difficult to prove. *See In re Bayer AG Sec. Litig*., No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008). "[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *46. "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc*., 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements

for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").[8]

As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc*., 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), rev'd on other grounds sub nom. *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). Plaintiffs faced that very risk in this litigation. As described in greater detail in the accompanying Final Approval Brief and the Weinrib Declaration, this litigation involved difficult and complex expert-intensive issues regarding the esoteric world of dark pool trading.

Indeed, the complexity of this case is evidenced by the intricate issues litigated during Defendants' appeal before the Second Circuit of the district court's class certification decision. The appeal covered questions concerning whether plaintiffs must proffer direct evidence of market efficiency to invoke *Basic's* fraud on the market presumption of reliance and what standard defendants must meet to rebut that presumption once invoked.  In a significant decision which will form the bedrock of class action jurisprudence for years to come, the Second Circuit affirmed the district court's certification of the class and held that plaintiffs need not always demonstrate market efficiency using direct evidence, *i.e.,* an event study.  The Court further held that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

This was a risky case with a trial date looming.  At trial, the jury would have had to decide a battle of the experts, determining whether Barclays' securities traded on an efficient

---

[8] *See, e.g., Hubbard*, 688 F.3d 713 (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins*, 116 F.3d at 1448-49 (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

market, entitling Plaintiffs to a presumption of reliance, but permitting Defendants' inevitable rebuttal evidence on price impact under *Halliburton v. Erica P. John Fund,* 134 S. Ct. 2398 (2014). The jury would then have had to decide other expert-dependent issues—what was the artificial inflation of Barclays securities and how much of the price decline was attributable to the alleged disclosure of information correcting Defendants' false statements. *See*, *e.g.*, *Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release because the complaint failed to "explain why the disclosure on page eight—as opposed to all the other information in the extended 12-page press release—caused the price decline"). Moreover, it must be acknowledged that scienter, is a notoriously difficult and risky element of securities fraud cases. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB, 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012).

Another considerable risk is whether Plaintiffs could ultimately prove, in the face of vigorous opposition, that the Class was damaged. Proving the full amount of damages is a risk element in this case as in every securities fraud action. *See In re Milken & Associates Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts...with no guarantee of the outcome"); *see also In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (same). Disentangling the market's reaction to various pieces of news to establish loss causation would have required complicated expert testimony and use of methodologies that are debated among economists. "Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony."

*Shapiro v. JPMorgan Chase & Co.,* No. 11 Civ. 8831 (CM)(MHD), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014).

The damage assessments of the parties' trial experts would be sure to vary substantially, and trial would become a "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *Maley*, 186 F. Supp. 2d at 365. Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  For these reasons, vigorous challenges to loss causation pose a significant risk to Plaintiffs at summary judgment, trial, and on appeal.  *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (plaintiffs' jury verdict in a Section 10(b) securities fraud reversed based on failure to prove loss causation); *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment on the element of loss causation on the ground that class plaintiffs did not meet their burden of disentangling the fraud-related and non-fraud-related portions of the stock decline).

Given the uncertain prospects for success at trial and on appeal, settlement at this point in the litigation is highly beneficial to the class.  The Settlement will provide tangible and certain

relief to the class now, "without subjecting them to the risks, complexity, duration, and expense of continuing litigation." *Global Crossing*, 225 F.R.D. at 456- 57; *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) (burden in proving the extent of the class' damages weighed in favor of approving fee request).

Accordingly, these factors support the conclusion that the requested fee is reasonable and fair.

### 3. The Settling Parties Were Represented by Experienced, High-Caliber Counsel Who Approved the Settlement.

The result achieved and the quality of the services provided are important factors to be considered in determining the amount of reasonable attorneys' fees under a percentage-of-fund analysis. *See Goldberger*, at 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985). Despite the significant risk to recovery in this Action, Counsel successfully obtained a substantial cash settlement for the Settlement Class.

The standing and prior experience of Counsel is also relevant in determining fair compensation. *See, e.g., Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 U.S. Dist. LEXIS 24902, at *24 (E.D.N.Y. May 28, 1986). As the firm resume demonstrates,[9] Pomerantz (Class Counsel) has extensive experience in the specialized field of securities litigation.[10] Pomerantz leveraged its experience and resources to thoroughly evaluate the merits and value of the case and successfully negotiate the Settlement.

---

[9] The resumes of Pomerantz and Rosen Law are submitted as Weinrib Decl. Ex. 2 (Pomerantz Decl., Ex. A) and Ex. 3 (Rosen Law Decl., Ex. A), respectively.

[10] *See*, *e.g.*, *In re Montage Tech. Group Ltd. Sec. Litig.*, 14-cv-722-SI (N.D. Cal.); *In re Lihua Int'l Inc. Sec. Litig.*, No. 14-cv-5037-RA (S.D.N.Y.); *Lewy v. Skypeople Fruit Juice, Inc.*, 11-cv-2700 (S.D.N.Y. 2011); *Perry v. Duoyuan Printing, Inc.*, 10-cv-07235 (S.D.N.Y.); *Munoz v.*

The quality and vigor of opposing counsel is also important in evaluating the services rendered by plaintiffs' counsel. *See, e.g., Warner Commc'ns*, 618 F. Supp. at 749. This litigation was vigorously contested by Defendants who were ably represented by very experienced and qualified attorneys from Sullivan & Cromwell LLP. *See Flag Telecom*, 2010 WL 4537550, at *28 (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel). "[N]otwithstanding this formidable opposition, Counsel was able to develop Plaintiffs' case so as to resolve the litigation on terms favorably to the Class." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *49. The fact that Counsel achieved the Settlement for the Class in the face of high-quality legal opposition further evidences the quality of Counsel's efforts.

### 4. The Requested Fee in relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law.

Under the percentage-of-recovery approach, Counsel's fee request of thirty percent (30%), or $8,100,000, of the gross Settlement Fund is fair and reasonable for litigation of this kind and wholly consistent with the range of percentages that courts in this Circuit have awarded in similar securities class-action settlements of this size. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("For example, it is very common to see …30% contingency fees in cases with funds between $10 million and $50 million"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (approving 33% fee); *In re Amaranth Nat. Gas Commodities Litig.*, No. 07 Civ. 6377 SAS, 2012 U.S. Dist. LEXIS 82599, at *9 (S.D.N.Y. June 11, 2012) (awarding 30%, or $23,130,000, for reaching "reasonable" but "by no means extraordinary" settlement); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *15-

---

*China Expert Tech., Inc.*, 07-cv-10531 (S.D.N.Y.); *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016).

*18 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement); *Citiline Holdings, Inc. v. iStar Fin., Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013) (awarding 30% of $29 million settlement); *In re Sadia S.A. Sec. Litig.,* 2011 U.S. Dist. LEXIS 149107, at *12 (awarding 30% of $27 million settlement); *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *60 (awarding 33% of $15 million settlement); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of $170,084,950.00).

### 5. Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement.

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions […].'" *Amgen*, 568 U.S. at 478. The meritorious private actions that the Supreme Court referred to are largely class actions: the case that *Amgen* quoted, *Tellabs*[11], and the two cases that *Tellabs* relied upon for the proposition quoted in *Amgen* were all securities class actions.[12] Public policy favors granting counsel fees sufficient to reward counsel for bringing securities class actions and to encourage them to bring additional such actions. *In re Worldcom, Inc. Sec. Litig.*, 388 Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). The "essential supplement" of private securities enforcement depends on adequate common-fund attorneys' fee awards. Here, the fee of $8,100,000, plus

---

[11] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).
[12] *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *J. I. Case Co. v. Borak*, 377 U.S. 426, 427, 84 S. Ct. 1555, 1557 (1964).

accrued interest, is consistent with the policy to incentivize well-qualified plaintiffs' counsel to prosecute federal-securities-law actions.

### 6. The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903* (1984) ("In tort suits, an attorney might receive one third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). On a percentage basis, the compensation requested here is within the range of percentage fee awards within the Second Circuit. *In re Amaranth Nat. Gas Commodities Litig.,* 2012 U.S. Dist. LEXIS 82599, at *6 (awarding 30% of $77.1 million fund); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02 CV 2133 (EBB), slip op. at 8-9 (D. Conn. Jan. 21, 2005) (awarding 33- 1/3% of $16.5 million fund); *Collins v. Olin Corp*., No. 3:03-cv-945 (CFD), 2010 WL 1677764, at *7 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund as attorneys' fees); *Stefaniak v. HSBC Bank USA, N.A*., No. 1:05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *15-*18 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement); *Citiline Holdings, Inc. v. iStar Fin., Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013) (awarding 30% of $29 million settlement); *In re Sadia S.A. Sec. Litig.,* 2011 U.S. Dist. LEXIS 149107, at *12 (awarding 30%

of $27 million settlement); *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *60 (awarding 33% of $15 million settlement); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of $170,084,950.00).

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *AOL Time Warner*, 2006 WL 3057232, at *40 (describing this second analysis); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002). The lodestar-multiplier method involves calculating the product of the number of hours worked and counsel's hourly rates—the "lodestar"—and adjusting the lodestar for contingency, risk, and other factors by applying a "multiplier" to the lodestar. *Grinnell*, 495 F.2d at 470-71. Although the Second Circuit has encouraged the practice of performing this lodestar "cross-check" on the reasonableness of a fee award based on the percentage-of-recovery approach, when doing so, the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50.

As set forth in Weinrib Decl., Ex. 2 (Pomerantz Decl.) and Ex. 3 (Rosen Law Decl.), counsel expended 7469.34 hours for a total lodestar of $4,776,953 in litigating this Action.[13]

---

[13]  In computing the lodestar, the hourly billing rate to be applied is the "market rate"—the hourly rate that is normally charged in the community where counsel practices. *See, e.g., Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order," holding that district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high"); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("value of an attorney's time generally is reflected in his normal billing rate").

The lodestar multiplier is 1.7.[14]  This multiplier is well within the range of lodestar multipliers approved by courts in the Second Circuit, which further demonstrates the reasonableness of the requested fee.  Lodestar multipliers of nearly five have even been deemed common by courts in this District.  *EVCI Career Colleges*, 2007 U.S. Dist. LEXIS 57918, *17 (S.D.N.Y. July 27, 2007) (citing cases); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (approving multiplier of 3.47 when counsel achieved an early settlement); *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (emphasis added)( "the resulting multiplier of 2.09 is at the **lower** end of the range of multipliers awarded by courts within the Second Circuit[.]"); *see also Colgate-Palmolive*, 36 F. Supp. 3d at 353 (5 multiplier is "large, but not unreasonable").

### 7.    Counsel Should Be Reimbursed for $791,680.21 in Litigation Expenses, Which Is Far Below the Already-Requested $1,000,000 Limit.

Counsel further request that in addition to awarding them reasonable attorneys' fees, the Court grant their request for reimbursement of $791,680.21 in litigation costs and expenses incurred or expected to be incurred in connection with the prosecution of this Action.  Courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by a paying client.  *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132, 143 (S.D.N.Y. 2008); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).

The relatively significant expense items included, for example, expert fees, deposition charges, investigator fees, online research, and database charges, and are further itemized in the

---

[14] This time does not include time that will be expended supervising the claims administrator throughout the claims review process (nor will any further compensation be sought for such time).

accompanying Pomerantz Declaration. Weinrib Decl., Ex. 2. These fees were necessary and reasonable for the prosecution and resolution of this Action. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 n. 8 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel); *Campos v. Goode*, No. 10-cv-0224 (DF), 2011 WL 9530385, at *8 (S.D.N.Y. Mar. 4, 2011) (reimbursing mediation fee); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1995) (reimbursing investigator fee).

### D. The Proposed Plaintiffs' Awards Are Reasonable.

The PSLRA permits Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"). In accordance with the PSLRA and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See, e.g.*, *See Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006, Apr. 16, 2007) (granting $1.7 million each to nine class representatives, for a total of $15.4 million); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8,

2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to sole lead plaintiff); *In re Tronox, Inc. Sec. Litig.*, No. 09-cv-6220 (SAS), Final Judgment Approving Class Action Settlement (S.D.N.Y. Nov. 26, 2012), Dkt. 202 (awarding $194,460, including $129,804 to two related lead plaintiffs); *FLAG Telecom*, 2010 WL 4537550, at *31 (awarding a lead plaintiff $100,000); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-cv- 8144 (CM), Decision and Order Approving Settlement (S.D.N.Y. Dec. 23, 2009), Dkt. 333 (awarding $214,657, including $144,657 to related New Jersey pension funds); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. CIV.A. 08-11064-NMG, 2012 U.S. Dist. LEXIS 174711, at *7-8  (D. Mass. Dec. 10, 2012) (reimbursing institutional lead plaintiffs a total of $54,626 for the time that their employees spent assisting in prosecution of the action, where lead plaintiffs had "worked closely with counsel throughout the case, communicated with counsel on a regular basis, reviewed and provided input with respect to counsel's submissions, provided information, produced documents, and participated in settlement discussions").

Here, Plaintiffs at all times adequately represented the Settlement Class and should receive $35,000 total—$20,000 to Mr. Sahni and $15,000 to Mr. Waggoner—for their efforts. Plaintiffs regularly communicated and met with Counsel regarding the posture and progress of the case, reviewed filings and transcripts, reviewed and/or discussed all significant decisions in the Action; (e) produced documents in response to Defendants' discovery requests, produced documents, traveled and sat for depositions, conferred with Counsel about litigation and settlement strategies,  and provided authorization to Counsel for the range to be sought in the

settlement negotiations. *See* Weinrib Decl., Ex. 4 (Mr. Sahni Decl.), Ex. 5 (Mr. Waggoner Decl.).

The foregoing efforts are precisely the types of activities that courts have found to support reimbursement to Plaintiffs based on the value of the time expended by them. *See, e.g.*, *Evergreen Ultra*, 2012 U.S. Dist. LEXIS at *7-8 (awarding $54,626 to lead plaintiffs who had "worked closely with counsel throughout the case, communicated with counsel on a regular basis, reviewed and provided input with respect to counsel's submissions, provided information, produced documents, and participated in settlement discussions"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *21, 2009 U.S. Dist. LEXIS 120953, at *6 n.1, *62 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives"); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to eight lead plaintiffs who "communicated with counsel throughout the litigation, reviewed counsels' submissions, indicated a willingness to appear at trial, and were kept informed of the settlement negotiations, all to effectuate the policies underlying the federal securities laws").

The requested award is also appropriate in light of "the relationship between the requested incentive award and the amounts recovered by absent class members under the settlement." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010) (citation omitted); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) ($3,000 award out of $1.2

million settlement); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ($7,500 award out of $10 million settlement).

Counsel submits that the relatively modest request of an award in the amount of $35,000 total to compensate the Class Representatives in this Action for their time and service to the Settlement Class, as well as to function as an incentive to serve as class representative, is reasonable.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Counsel's application for an award of attorneys' fees, reimbursement of reasonable litigation expenses, and awards to the Plaintiffs.

Dated: April 12, 2019                    Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone:  (212) 661-1100

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

*Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of April, 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
